657 P.2d 865

**STATE of Arizona, Appellee,**

v.

**William Lyle WORATZECK, Appellant.**

No. 5142.

Supreme Court of Arizona,
En Banc.

Dec. 17, 1982.
Rehearing Denied Jan. 25, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Michael D. Jones, Asst. Attys. Gen., Phoenix, for appellee.

Charles L. Weninger, Tucson, for appellant.

HAYS, Justice.

Linda Louise Leslie was a 36-year-old woman who, because of Huntington's disease, had the mental capacity of a 15-year-old. She lived in Casa Grande, Arizona, in a shed rented from appellant and attached to his trailer. In March, 1980, Linda Leslie was robbed of approximately $107 and was killed. She was strangled, stabbed in the chest and abdomen and beaten on the head; her body and house were burned.

William Lyle Woratzeck was indicted by the Pinal County Grand Jury for robbery, burglary, arson, and first degree murder in connection with the death of Leslie. He was convicted by a jury of first degree murder, armed robbery and burglary of a residential structure. The sentencing judge found two aggravating circumstances and no mitigating ones and sentenced appellant to death.

We take jurisdiction pursuant to A.R.S. § 13–4031 and we affirm.

Appellant presents us with these questions for decision:

1. Was the admission of alleged hearsay testimony at the trial prejudicial error?

2. Did the trial court err in denying appellant's petition for post-conviction relief based on the admission of hypnotically induced testimony at the trial?

3. Did the trial court err in refusing to give appellant's requested jury instructions regarding the mental state required for felony murder?

4. Did the trial court err in its jury instruction defining the crime of armed robbery?

5. Did the trial court err in denying appellant's motion to suppress the physical evidence provided by appellant's wife?

6. Was it error for the trial court to refuse appellant's requested instruction regarding the requisite connection between the death and the underlying felony?

7. Does the Arizona death penalty statute allow arbitrary infliction of the death penalty in violation of constitutional principles of due process?

8. Did the trial court abuse its discretion in sentencing appellant to death?

I

Appellant asserts that his sixth-amendment right to confront witnesses against him was violated by the trial judge's admission of alleged hearsay testimony.

Roy and Neva Vaughn had helped to care for Linda Leslie. At the trial, defense counsel asked Roy Vaughn if he knew whether someone had threatened to come and get Linda if she reported a certain incident to the police. Roy Vaughn testified that he had heard about this from Linda, but he didn't know of whom she was speaking. Counsel then asked if Roy Vaughn knew why someone had threatened Linda. Roy Vaughn said it was because that person had robbed and raped Linda. After Roy Vaughn stepped down, the state called Neva Vaughn and asked her about the rape and robbery. Neva Vaughn said she had heard about it from Linda and that Linda had told her her landlord had done it. Defense counsel did not object to this testimony.

Objections to admission of testimony may be waived, either by failure to assert them or by conduct implying waiver. See 75 Am.Jur.2d Trial § 173 (1974). Here, not only did defense counsel fail to object to

the testimony, he opened the door to inquiry about the defendant's involvement in the rape-robbery incident by introducing and developing the topic on examination of Roy Vaughn. When counsel opens the whole field of inquiry, he cannot assign its fruits as error on appeal. State v. Arriola, 99 Ariz. 332, 409 P.2d 37 (1965).

Appellant next claims if we find the error was invited, we must find defendant's counsel ineffective. We disagree. In State v. Watson, 134 Ariz. 1, 653 P.2d 351 (1982), we set out the standard for judging competency of counsel. Minimal professional competence is what is now required. As noted in Watson, we have always held that disagreements as to trial strategy or errors in trial tactics will not support an ineffectiveness claim as long as the challenged conduct could have had some reasoned basis. Here, defense counsel might have hoped to elicit testimony from Roy Vaughn to suggest someone other than appellant had committed the murder. There is no other claim against counsel's effectiveness, and from the record it appears his performance was adequate. There was no error in admitting Neva Vaughn's testimony and no ineffective assistance of counsel.

II

Appellant contends he should have been given a new trial on his petition for post-conviction relief. He argues he was prejudiced by the admission into evidence of Rosemary Martinez's testimony because she had been hypnotized during pretrial investigation by the state. Rosemary gave four pretrial interviews and was hypnotized prior to the third one. Her testimony at trial was consistent with all the interviews and she gave no new evidence after being hypnotized.

Since State ex rel. Collins v. Superior Court, etc., 132 Ariz. 180, 644 P.2d 1266 (1982), and State v. Mena, 128 Ariz. 226, 624 P.2d 1274 (1981), a witness is incompetent to testify about events recalled after hypnosis. However, Rosemary Martinez's hypnosis and testimony occurred prior to our deci-

sion in *Mena* and in such cases we will not reverse the conviction if admitting the testimony was harmless error. Here, since Rosemary Martinez's testimony before and after hypnotism was consistent and no new evidence was presented by her after hypnotism, we find Woratzeck was not prejudiced by its admission and any error was harmless. *State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982).

### III

Appellant requested the following instructions be given to the jury:

"Before you may find a person guilty of murder in the first degree based upon the commission or attempted commission of a robbery, you must find evidence that the accused had the specific intent to commit robbery at the time that an act which caused death was committed."

and

"Before you may find a person guilty of murder in the first degree based upon the commission or attempted commission of a burglary, you must find that there is evidence, independent of the fact of the homicide which shows that the accused had the specific intent at the time of entry to commit a felony or theft."

The trial court refused these instructions and appellant assigns error.

■ Refusal of a requested instruction is not error where the jury is adequately instructed on defendant's theory of the case, and the proposed instruction was an incorrect statement of the law. *State v. Miller,* 128 Ariz. 112, 624 P.2d 309 (1981). These instructions are not correct expressions of the law in Arizona. Felony murder requires no specific mental state other than that which is required for the commission of any of the felonies enumerated in the statute. A.R.S. § 13–1105(B); *State v. Arias,* 131 Ariz. 441, 641 P.2d 1285 (1982). The judge instructed the jury on the mental states required for robbery, armed robbery and burglary and gave the following instruction taken directly from the felony murder statute, A.R.S. § 13–1105(A)(2):

"The crime of First Degree Murder requires proof of the following two things:

1. The defendant committed or attempted to commit Burglary or Robbery.

2. In the course of and in furtherance of the crime or immediate flight from the crime, the defendant or another person caused the death of any person."

There was no error.

### IV

■ Woratzeck contends the trial judge erred in giving the following instruction:

"The crime of armed robbery requires proof of the following two things:

1. The defendant committed a robbery; and

2. The defendant was armed with a deadly weapon, or used or threatened to use a dangerous instrument."

Defense counsel objected to this instruction on the ground that mere possession of a dangerous instrument is insufficient and that there must be evidence that the defendant used the instrument to obtain the property of another. There was ample evidence to show appellant used a dangerous instrument in committing the robbery. Two knives were found at the crime scene and the victim was stabbed.

The instruction given is taken directly from the armed robbery statute, A.R.S. § 13–1904, and was a correct statement of the law. There was no error in giving the armed robbery instruction.

### V

■ Woratzeck contends the trial court erred in denying his motion to suppress physical evidence provided by his wife. Mrs. Woratzeck consented to a search of the home and showed the police where to find the clothing her husband had worn the night of the crime. Appellant argues this consent was invalid. We disagree. In *Yuma County Attorney v. McGuire,* 111 Ariz. 437, 532 P.2d 157 (1975), we held that a spouse may consent to a search of the couple's home when each spouse exercises control and dominion over the home and the

other spouse is not present but is a suspect in a crime. Appellant's arguments have not persuaded us that we should depart from this rule. The trial court was correct in denying the motion to suppress.

## VI

■ Appellant contends that the trial court erred in refusing to give this instruction on first degree murder:

"The accused cannot be convicted of murder in the first degree unless the death and the robbery or burglary were parts of one continuous transaction and were closely connected in point of time, place and causal relation. If you find that the crime of robbery or burglary was completed, terminated or abandoned prior to an act which caused death or that the intent to commit or attempt to commit robbery or burglary arose after the death, then you cannot find the accused guilty of first degree murder."

The court refused that instruction and gave this one:

"The crime of First Degree Murder requires proof of the following two things:
1. The defendant committed or attempted to commit Burglary or Robbery.
2. In the course of and in furtherance of the crime, or immediate flight from the crime, the defendant or another person caused the death of any person."

Appellant cites *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), to support his requested instruction, but it does not help him. In *Richmond,* the court found the evidence showed the death transpired during or immediately following the robbery as a part of the chain of events which the defendant's deliberate acts had set in motion. The court said judges will not hold a stopwatch on events or artificially break down the actions of a defendant into separate components in order to avoid the clear intent of the legislature in enacting the felony murder rule. Certainly, the evidence here could be seen to show that Linda Leslie's death occurred during or immediately following the robbery.

■ The instruction given was taken directly from the felony murder statute and was thus a correct statement of the law regarding the relationship between the murder and the underlying felony. A trial court may refuse to give a requested instruction where the substance of that instruction is covered by another instruction given. *State v. Melendez,* 121 Ariz. 1, 588 P.2d 294 (1978). The trial judge did not err in refusing appellant's requested instruction.

## VII

■ Appellant challenges the constitutionality of the death penalty statute. His charge is that it allows arbitrary infliction of the death penalty because there is no guidance provided as to what constitutes a mitigating circumstance or how to balance the aggravating factors against the mitigating factors.

We have previously considered this challenge and rejected it. *State v. Mata,* 125 Ariz. 233, 609 P.2d 48 (1980). We conclude here, as we did in *Mata,* that the Arizona death penalty statute is not violative of due process.

## VIII

■ Appellant asserts that he should not have been sentenced to the death penalty.

The gravity of the death penalty requires us to make an independent review of its imposition to determine its appropriateness. *Richmond, supra.* The question before us is not whether the trial court properly imposed the death penalty, but whether, based upon the record before us, we believe that the death penalty should be imposed. *State v. Watson,* 129 Ariz. 60, 628 P.2d 943 (1981). A.R.S. § 13–703(F) and (G) set forth aggravating and mitigating circumstances to be considered in determining whether to impose a sentence of life imprisonment or death. Subsection (E) requires imposition of the death penalty where there are one or more aggravating circumstances and no

mitigating circumstances calling for leniency. We must independently examine the facts that establish the presence or absence of aggravating and mitigating circumstances. *Richmond, supra.*

The sentencing judge found two aggravating and no mitigating circumstances. The judge found that the crime had been committed in an especially heinous, cruel or depraved manner. Our review of the facts leads us to the conclusion that this aggravating circumstance exists.

At the trial, the pathologist testified that the victim had been strangled and had suffered three stab wounds in the chest and abdomen and two blows to the head. The pathologist stated that any of these attacks were potentially fatal, but he determined that the blows to the head were inflicted last and were the cause of death. His opinion was that Leslie was alive during the entire series of assaults. If she were conscious, she would thus have suffered the pain and fear necessarily accompanying this experience and the mental distress she suffered would likely have been greater than for the average person since she suffered from Huntington's disease and was mentally retarded and had poor physical coordination. She would likely have lacked understanding of what was happening during the attack and would have been physically helpless.

In *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704, 716 (1977), we set forth these definitions of heinous, cruel and depraved:

"Heinous"—hatefully or shockingly evil: grossly bad

"Cruel"—disposed to inflict pain, esp. in a wanton, insensate or vindictive manner: sadistic

"Depraved"—marked by debasement, corruption, perversion or deterioration.

Cruelty involves the pain and mental and physical distress visited upon the victims. *State v. Ceja,* 126 Ariz. 35, 612 P.2d 491 (1980).

While the evidence in this case is inconclusive as to whether the victim suffered in such a way as to support a finding that the crime was committed in a cruel manner, this fact in itself is not determinative, for if the crime was committed in an especially heinous, cruel or depraved manner, either all or one, an aggravating circumstance exists. *Ceja, supra.*

Heinous and depraved go to the mental state and attitude of the perpetrator as reflected by his words and actions. In *State v. Ceja,* 115 Ariz. 413, 417, 565 P.2d 1274, 1278 (1977), we said:

"We think that defendant's conduct in continuing his barrage of violence, inflicting wounds and abusing his victims beyond the point necessary to fulfill his plan to steal, beyond even the point necessary to kill, is such an additional circumstance of cruel and depraved nature so as to set it apart from the 'usual or the norm.' "

The violence committed against Linda Leslie was certainly beyond the point necessary to fulfill a plan to steal and even to kill. These acts reflect a heinous and depraved attitude.

The sentencing judge also found as an aggravating circumstance that the crime had been committed in the expectation of the receipt of something of pecuniary value. Our review of the facts has convinced us that this circumstance also exists. In addition to the fact that the jury found the defendant guilty of the robbery of Leslie, the record contains evidence that Woratzeck had been without funds shortly before the crime. Witnesses who had seen him at a bar that evening testified that he had asked to borrow money to buy beer. The record also contains evidence that the day after the crime, Woratzeck had a sum of money almost identical to that taken from Leslie. Woratzeck's story of having won the money playing pool at the bar the previous evening was disputed by witnesses who said it would have been impossible to win that much money playing pool at that bar since any betting was always for small change.

The sentencing court found that appellant had failed to show as a mitigating circumstance that intoxication caused sig-

458

nificant impairment of his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirement of law. We make the same finding.

 The fact that a defendant was to some degree intoxicated is not, by itself, a mitigating circumstance. Whether the defendant's intoxication was a mitigating circumstance such as would make imposition of the death penalty for homicide inappropriate depends upon whether his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to requirements of law was significantly impaired. *State v. Jordan,* 126 Ariz. 283, 614 P.2d 825 (1980). While Woratzeck presented evidence that he had been intoxicated at the time of the crime, it was inexact as to the level of intoxication and the only manifestation was the fact that he was mumbling.

Other evidence in the record indicates Woratzeck was not drunk the night of the crime. Witnesses who saw him at the time the fire was being extinguished and later the morning after the crime said that he had not been drunk. A police officer testified that he had seen appellant the evening of the crime with a beer in his hand, but that appellant had had no trouble walking or talking. Also, after the crime, Woratzeck gave the police statements in which he said that he had known what he was doing during the period in question.

In our independent review of the record in this case, we conclude that the imposition of the death penalty here is not disproportionate to other death penalty cases. There has been no suggestion and there is no evidence in the record that passion, prejudice or any other arbitrary factor affected the sentencing judge's decision to impose the death penalty.

We have examined the record for fundamental error pursuant to A.R.S. § 13–4035 and find none. Judgment of conviction and sentence of death affirmed.

HOLOHAN, C.J., and CAMERON and FELDMAN, JJ., concur.

GORDON, Vice Chief Justice (concurring in part and dissenting in part):

The killing of a mentally retarded woman under these circumstances and in this fashion satisfies me that it was done in an especially heinous or depraved manner and constituted an aggravating factor under A.R.S. § 13–703(F)(6). I also agree that no mitigating circumstances existed sufficiently substantial to call for leniency. Therefore, I concur in the correctness of the imposition of the sentence of death in this matter. However, to be faithful to my position in dissent in *State v. Clark,* 126 Ariz. 428, 616 P.2d 888 (1980), I cannot agree with the majority's interpretation of the aggravating circumstance concerning pecuniary gain.