733 P.2d 300

**Wesley E. PHILLIPS and Marie R. Phillips, husband and wife, Plaintiffs-Appellants,**

v.

**Kenneth P. CLANCY and Jane Doe Clancy, husband and wife, Defendants-Appellees.**

**No. 1 CA–CIV 8690.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 11, 1986.

Review Denied Feb. 13, 1987.

Bilby & Shoenhair, P.C. by Alexander L. Sierra, Tucson, for plaintiffs-appellants.

Vermeire, Turley & Ryan, P.C. by Michael P. Morrison and Albert R. Vermeire, Phoenix, for defendants-appellees.

## OPINION

MEYERSON, Judge.

## I. INTRODUCTION

This case involves a claim for legal malpractice. For the purpose of this appeal, the parties agree that the defendant attorney failed to make a timely request for a hearing before an administrative law judge. Summary judgment was granted in favor of the defendant. Attached to his motion for summary judgment, the defendant presented the affidavit of an administrative law judge who was familiar with the plaintiff's case. According to the judge, the plaintiff would have been unsuccessful even if the defendant had timely requested the hearing. The trial court

found that this evidence proved conclusively that the plaintiff would have lost his claim on the merits and therefore the defendant was not guilty of legal malpractice because he did not "cause" plaintiff any injury. Plaintiff has filed this appeal to challenge the summary judgment ruling against him.

## II. FACTS

On May 23, 1980, plaintiff-appellant Wesley E. Phillips, then 42 years old, filed an application for disability insurance benefits with the Social Security Administration claiming that he was unable to work due to stomach ailments. Phillips was employed as a mechanic with the United States Post Office where he had worked since 1975. Phillips was first diagnosed as having an ulcer condition in 1957. His condition grew worse over the years and in January, 1978, he underwent stomach surgery. Even after the surgery, Phillips continued to suffer from constant pain, uncontrollable diarrhea and vomiting. His condition required further surgery in January, 1979, and in February, 1980. Phillips found his condition to be worsening even after the surgery in 1980, and therefore he remained off work during the following months. In June, 1980, he informed the post office that his condition prevented him from ever returning to his job. Thereafter, he was approved for disability retirement.

Plaintiff's physician, Dr. Edward Alpar, M.D., reported that Phillips was suffering from (1) gastric retention secondary to vagotomy, (2) episodes of dumping syndrome and (3) alkaline gastritis. Dr. Alpar concluded that Phillips "should be considered totally disabled for his particular profession." Plaintiff's application for Social Security disability benefits was denied after the information he submitted was reviewed by an examiner and a physician. The "initial determination" issued on July 18, 1980, stated that his condition was not severe enough to establish disability status. The examiner noted that Phillips should have sufficient functional capacity to perform sedentary work requiring the ability to sit six to eight hours per day and to lift and occasionally carry up to ten pounds. Phillips filed a timely request for reconsideration which was denied.

After his request for reconsideration was denied, Phillips retained defendant-appellee Kenneth Clancy to present his claim at a hearing before an administrative law judge. Clancy, however, failed to file a timely request. When Clancy realized the time to file the request had run, he advised Phillips merely to file another application for benefits and to retain another attorney.

Despite repeated efforts, Phillips never succeeded in obtaining a hearing on his claim or an award of disability benefits. His second application for disability benefits was denied as was his request for reconsideration of the denial. In July, 1981, his new counsel filed a request for hearing to appeal the denial of the second application. At this point the claim was considered by an administrative law judge for the first time. Judge Harold E. Patterson denied the request for hearing on the grounds that a final determination had been made on the prior application and that no new evidence sufficient to justify reopening the case had been presented. Phillips' subsequent appeal to the Social Security Administration Appeals Council eventually caused Judge Patterson to review the record again along with additional medical reports. Judge Patterson ruled that the attorney's failure to request a hearing provided no basis for reopening the claim and that the additional medical reports were irrelevant. Phillips filed a third request for disability benefits in July, 1982, which met the same fate as the second request.

In August, 1982, plaintiff and his wife filed suit for legal malpractice. Clancy filed a motion for summary judgment and submitted the affidavit of Judge Patterson. Judge Patterson stated that he had been an administrative law judge with the Social Security Administration for ten years. He stated that he had reviewed the entire file containing all documents, medical records and Phillips' deposition testimony. He

then stated, based on his review of the case, that even if the request for hearing had been timely filed and he had heard the case, he would not have reversed the district examiner's decision because it was his opinion that Phillips did not qualify for disability benefits.

In response to the motion for summary judgment, Phillips submitted the affidavit of Dale D. Tretschok, an attorney experienced in representing applicants for Social Security disability benefits. Tretschok stated that based on his review of the case, and his experience in handling similar matters, there was an excellent chance for success before an administrative law judge. He further stated that even if the claim had been denied at all agency levels, he believed that the decision would have been reversed should an appeal be taken to a United States district court.

Phillips also submitted the affidavit of Ronald W. Baker, a certified rehabilitation counselor, who had evaluated several hundred similar cases. Baker stated that he had reviewed all the written information in this case and had met with the plaintiff. He stated that based upon Phillips' medical history, age, education, previous work experience, and lack of transferable skills, Phillips was totally unemployable.

The trial court granted summary judgment in favor of Clancy, finding no disputed issues of material fact. The trial court stated that it would be difficult to refute Judge Patterson's opinion that the claim would not have been successful even if a hearing had been held. The trial court also concluded that the Social Security Administration's determination could not have been overturned at the district court level because it believed the record would contain substantial evidence to support the agency's decision.

## III. OBJECTIVE STANDARD

As in any negligence action, a plaintiff in a legal malpractice action must show the following basic elements: duty, breach of duty, causation, and damages. *See generally* R. Mallen & V. Levit, *Legal Malpractice* § 111 (2d ed. 1981) (*Legal Malpractice*). One claiming legal malpractice must therefore establish (1) the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession, (2) breach of that duty, (3) that such negligence was a proximate cause of resulting injury, and (4) the fact and extent of the injury.

The trial court granted summary judgment in favor of Clancy based upon its determination that Judge Patterson's affidavit established that even if Clancy had timely requested a hearing, Phillips would have been unsuccessful in his claim for disability benefits. We conclude that this ruling was in error.

In legal malpractice cases, the impact of the lawyer's negligence in the underlying action is judged against an objective standard rather than a subjective one, such as was applied by the trial court. In a legal malpractice action, the plaintiff must prove that but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit. *Molever v. Roush*, 152 Ariz. 367, 374, 732 P.2d 1105, 1112 (App.1986.) This is commonly called a "case within the case." *Frey v. Stoneman*, 150 Ariz. 106, 111, 722 P.2d 274, 279 (Ariz.Sup.Ct.1986). Under a subjective standard, such as was applied by the trial court, the arbiter from the first suit would be asked to testify concerning the effect, if any, of the attorney's actions on the outcome of the underlying case. Under an objective standard, the trier in the malpractice suit views the first suit from the standpoint of what a reasonable judge or jury would have decided, but for the attorney's negligence. We hold that the objective standard is most appropriate.

The subjective standard has substantial shortcomings which make its use unworkable. To apply a subjective standard would require the arbiter in the first trial to testify in the malpractice case and to answer the question of whether, but for the attor-

ney's malpractice, the result would have been different. Where, for example, a judge sat as the trier of fact in the first suit, the judge could be called to testify in the malpractice action and venture an opinion on the effect of the attorney's negligence in the first suit. For the following reasons, we conclude that this approach is unacceptable.

■ The circumstances involving testimony by judges [1] fall into two broad categories: (1) those in which judicial testimony is elicited as to factual matters brought out in the former proceeding, and (2) those in which the impressions of the judge are sought on issues such as the reputation or credibility of a witness at the earlier trial. *See generally Annot.,* 86 A.L.R.3d 633 (1978). For example, judges have been called in later civil proceedings to relate the testimony of a witness in the original proceeding who is deceased, *Wood v. Waterbury,* 113 Conn. 457, 155 A. 825 (1931), absent from the jurisdiction, *State v. Ortego,* 22 Wash.2d 552, 157 P.2d 320 (1945), or who has since become mentally or physically incapacitated. *Jolly v. State,* 269 So.2d 650 (Miss.1972). So too, a party has been permitted to call a judge to prove contradictions in a witness' testimony at two trials. *Woods v. Postal Telegraph-Cable Co.,* 205 Ala. 236, 87 So. 681 (1920). In Arizona, this court recently allowed a judge to testify in order to prove the rendition and terms of a judgment. *DeForest v. DeForest,* 143 Ariz. 627, 694 P.2d 1241 (App.1985).

In criminal cases, the testimony of a judge has been compelled where there is no record of the evidence presented in the prior proceeding. *State ex rel. Childs v. Hayward,* 109 N.H. 228, 248 A.2d 88 (1968). In *State v. Kelly,* 131 Vt. 582, 312 A.2d 906 (1973), the Vermont Supreme Court expressed the view that a judge is not immune from service of process and may be compelled to testify concerning the credibility of a police officer. In Arizona, this court has upheld the admissibility of a judge's opinion regarding the truthfulness of the defendant. *State v. Miller,* 128 Ariz. 112, 624 P.2d 309 (App.1981). In *Miller,* the judge had presided over a prior civil suit filed against the defendant. The court cautioned that allowing such testimony "is a matter seriously to be weighed by the trial court" with a view to its prejudicial impact. *Id.* at 118, 624 P.2d at 315. The court cited the nature of the case and the matters at issue as reasons for its decision to uphold the trial court's ruling. The trial had extended over six weeks and the state had called numerous witnesses. The evidence of the defendant's guilt was very strong. Finally, the defendant's reputation for truthfulness was directly relevant to perjury charges in the case.

As these cases illustrate, judicial testimony has been selectively allowed in situations where the judge has either personal knowledge of a factual matter litigated before him or a firsthand impression of the witness in a trial over which he presided. Many courts express reservations about the use of judicial testimony and allow it only if the rights of a party cannot otherwise be protected. In *State ex rel. Carroll v. Junker,* 79 Wash.2d 12, 482 P.2d 775 (1971), the Washington Supreme Court stated:

Only in the rarest of circumstances should a judge be called upon to give evidence as to matters upon which he has

---

1. Although in this case the affidavit was submitted by an administrative law judge, we see no relevant distinction between the role of a judge and that of an administrative law judge. The status and functions of federal hearing officers and administrative law judges have been discussed by the United States Supreme Court in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Court stated:

There can be little doubt that the role of the modern federal hearing examiner or administrative law judge ... is 'functionally compara-

ble' to that of a judge. His powers are often, if not generally, comparable to those of a trial judge.... More importantly, the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency.

*Id.* at 513, 98 S.Ct. at 2914. *See Cortaro Water Users' Ass'n v. Steiner,* 148 Ariz. 314, 318, 714 P.2d 807, 811 (1986).

acted in a judicial capacity, and these occasions, we think, should be limited to instances in which there is no other reasonably available way to prove the facts sought to be established.

*Id.* at 20, 482 P.2d at 781.

Courts which exclude judicial testimony do so on various grounds. Some courts reason that it is too prejudicial to allow a judge to testify as a witness for one of the parties. In *Merritt v. Reserve Ins. Co.*, 34 Cal.App.3d 858, 882–83, 110 Cal.Rptr. 511, 527–28 (1973), the California court held that it was error to permit the judge in a prior action to testify that in his opinion a witness at the earlier trial had not been a persuasive witness. The court cited the appearance of impropriety and the prejudicial effect of such testimony as grounds for excluding it. *See also Aetna Casualty & Sur. Co. v. Price*, 206 Va. 749, 146 S.E.2d 220 (1966).

Many courts hold that the mental processes employed by a judge in formulating a decision are inadmissible. For example, in *Standard Packaging Corp. v. Curwood, Inc.*, 365 F.Supp. 134 (N.D.Ill.1973), a party wished to compel a patent examiner to answer questions relating to his official actions. The court offered the following analysis in excluding the testimony:

> The essential line of demarcation appearing from the cases is that judicial and quasi-judicial officers may be compelled to testify only as to relevant matters of fact that do not probe into or compromise the mental processes employed in formulating the judgment in question.... Thus, even though a particular inquiry may be factually directed, it may still be objectionable if it invades upon the official's good-faith decision-making prerogatives. It is apparent, however, that this doctrine does not exempt compulsory testimony as to all factual matters related to those prerogatives.

*Id.* at 135 (citations omitted). In *United States v. Dowdy*, 440 F.Supp. 894 (W.D.Va. 1977), a defendant was indicted for allegedly making false statements before a grand jury. The defendant wished to call the judge who, in prior proceedings, had cited her for contempt for improperly invoking her fifth amendment privilege. The defendant claimed that the judge's actions coerced her into testifying and therefore provided a defense to the above charge. In quashing the subpoena, the court made the following observations:

> While a judge enjoys no special privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony. Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to 'frivolous attacks upon its dignity and integrity, and ... interruption of its ordinary and proper functioning.'

*Id.* at 896 (citations omitted).

In applying the foregoing authorities to the case before us, we conclude that the objective standard is most appropriate. First, we are concerned with the appearance of impropriety created when a judge, in effect, sides with one of the litigants in an ongoing proceeding. *See Code of Judicial Conduct*, Canon 2(B). In testifying as a witness for either party in a malpractice action, it may appear that the judge is shedding his cloak of impartiality and "throwing the weight of his position and authority behind one of two opposing litigants." *Merritt v. Reserve Ins. Co.*, 34 Cal.App.3d at 883, 110 Cal.Rptr. at 528. The prospect that a jury would attach undue weight to a judge's testimony is, indeed, readily apparent.

Second, it is infeasible to allow judicial testimony of this kind. The interference and disruption of the work of the judiciary would be overwhelming. It is simply impractical, inefficient and unworkable to expect judges to testify how they would have ruled in the underlying case had the attorney not been negligent. Where a jury sat as the trier of fact, the subjective standard would require that the original jury be reconvened to give testimony on how it

would have decided the initial action had the attorney acted in accordance with professional norms. The specter of such a scene throws a chill down our judicial spine.

This issue was fully discussed by the court in *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis.2d 94, 362 N.W.2d 118 (1985) and we agree with the court's conclusion that the objective standard should apply in legal malpractice cases. The considerations discussed above have been summarized this way:

> Public policy considerations militate against the trial judge testifying as an expert witness in litigation involving parties who previously appeared before him. Ethical mandates governing judicial conduct dictate that a judge should not create the appearance of impropriety. Opinion testimony by a judge creates the appearance of impropriety. Opinion testimony by a judge creates the appearance of partiality on behalf of a litigant, is greatly prejudicial to the adverse party, and raises the suspicion of judicial favoritism in the prior litigation.

*Legal Malpractice* § 667. Accordingly, the trial court here erred in giving any consideration to the affidavit of Judge Patterson.

## IV THE APPROPRIATE ARBITER

An issue raised in the briefs and which will arise on remand, is whether a judge or jury should decide the merits of the underlying action—Phillips' eligibility for Social Security disability benefits. Phillips contends this task is for the jury; Clancy argues that it is for the judge. Two factors determine the appropriate arbiter: (1) whether appellate level or trial level malpractice is involved, and (2) whether issues of law or issues of fact must be resolved.

■ Appellate level malpractice commonly occurs when the original trial has ended and the attorney fails to timely file an appeal. The plaintiff must prove that an appellate court would have (1) granted review, and (2) rendered a favorable judgment. Courts have consistently found that these determinations are questions of law for the trial judge, rather than questions of fact for the jury. *Jablonski v. Higgins,* 6 Ohio Misc.2d 8, 10–11, 453 N.E.2d 1296, 1298–99 (Ct.C.P.1983); *Daugert v. Pappas,* 104 Wash.2d 254, 256, 704 P.2d 600, 603 (1985). We agree. Resolving legal issues on appeal is reserved for the exclusive province of judges. Accordingly, where issues of causation in a legal malpractice action hinge upon the possible outcome of an appeal, such issues are to be resolved by the trial judge as questions of law.

■ In trial level malpractice, the attorney's negligence either precluded a trial on the merits, or prevented the client's case from being presented according to professional standards. If the underlying suit would have been tried to a jury, or a judge sitting as a trier of fact, we conclude that the jury in the malpractice case should decide the disputed factual issues pertaining to the original suit. *But see Legal Malpractice* § 672.

■ For example, in *Chocktoot v. Smith,* 280 Or. 567, 571 P.2d 1255 (1977), the trial judge in a malpractice action refused to permit a jury to consider the factual issues in the first trial because a judge, sitting as the trier of fact, would have rendered the decision in the underlying suit. In rejecting this conclusion, the Oregon Supreme Court held that the jury should decide any factual issues raised in the underlying action. The court held that "the line dividing the responsibility of judge and jury runs between questions of law and questions of fact," rather than between questions for a jury and those for the trial court in the original action. *Id.* at 574, 571 P.2d at 1259. The court determined that a jury is fully capable of replicating the judgment of another fact-finding tribunal, whatever its composition. This conclusion is founded on the premise that the object of the second trial is not to determine what the original judge would actually have done. Rather, "the issue in the malpractice case is what the outcome *should* have been if the issue had been

properly presented." *Id.* at 573, 571 P.2d at 1258. The court enunciated the following principles for the trial of malpractice cases:

> The question what decision should have followed in the earlier case if the defendant attorneys had taken proper legal steps is a question of law for the court. Consequently such legal rulings are also open for briefing and review on appeal.
>
> The question what outcome should have followed if defendants had conducted a proper investigation, presentation (or exclusion) of evidence, or other steps bearing on a decision based on facts remains a question of fact for the jury (or for a judge when the malpractice case is tried without a jury). Similarly, it will be reviewable on appeal only to the same extent as other factual determinations. If the alleged negligence of an attorney in an earlier case involved both legal and factual elements, it would be necessary for the trial court to separate these elements and to instruct the jury accordingly.

*Id.* at 575, 571 P.2d at 1259.

In *Helmbrecht v. St. Paul Ins. Co.*, the Wisconsin Supreme Court adopted the reasoning of the *Chocktoot* court. In *Helmbrecht* an attorney was sued for negligence in the handling of a divorce proceeding. The divorce had been tried before a judge. The court held that in determining the appropriate fact finder in the malpractice action, the focus is not on who the original action is tried before, but rather, whether the issues remaining in the malpractice action are legal or factual issues. 122 Wis.2d at 124, 362 N.W.2d at 134. Recognizing that the issues in a divorce proceeding are mixed questions of law and fact, the court found that the jury in the malpractice action should determine what a reasonable judge would have ruled in the absence of attorney negligence. This determination would be made after the court separated the legal and factual elements and instructed the jury on matters of law.

Although the proceeding before the Social Security Administration involved an administrative appeal from an examiner's ruling to an administrative law judge, *see* 20 C.F.R. § 404.918 (1980),[2] it is clear that the alleged malpractice falls on the trial level side of the continuum.[3] At the proceeding before the administative law judge, the judge would have been sitting both as judge and jury. *See* 20 C.F.R. § 404.939 (1980). A hearing would have been held where evidence was submitted and factual determinations made concerning the scope and nature of Phillips' disability. Therefore, on remand, in the "case within the case," the jury should be instructed on the applicable Social Security law and regulations and be asked if, based on the facts presented, but for the alleged negligence, Phillips would have been entitled to disability benefits. In short, legal issues are to be decided by the judge; factual issues are to be decided by the jury. *Molever v. Roush*, 152 Ariz. at 374, 732 P.2d at 1112.

For the foregoing reasons, the summary judgment is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

BROOKS, P.J., and MOELLER, J., concur.

Note: The Honorable JAMES MOELLER, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.

---

2. The references to the Social Security Administration regulations are to those in effect at the time this matter was presented to that agency.

3. Clancy's reliance on *Daugert v. Pappas* is unpersuasive. In *Daugert*, the attorney failed to timely file a notice of appeal. Therefore, the issue in the "case within the case" was whether the party had a meritorious appeal. The court found that such a question could be decided by a judge as a matter of law because the appellate court in the underlying action would also have decided the case in the same fashion.