961 P.2d 1021

Louis **TOY and Alice Toy, husband and wife; Phoenix Wholesale Sporting Supply, Inc., an Arizona corporation, fka Phoenix Wholesale Shooters Supply, Inc., Plaintiffs–Appellants, Cross Appellees,**

v.

**A. Alexander KATZ and Harriet Katz, husband and wife, Defendants–Appellees, Cross Appellants.**

**Nos. 1 CA–CV 95–0409, 1 CA–CV 96–0232.**

Court of Appeals of Arizona, Division 1, Department C.

June 26, 1997.

As Amended July 8, 1997.

Review Denied Sept. 10, 1998.

May, Potenza, Judson & Baran, P.C. by Philip G. May, Phoenix, and Lee Allen Johnson, P.C. by Lee Allen Johnson, Tempe, for Plaintiffs–Appellants, Cross Appellees.

Teilborg, Sanders & Parks, P.C. by Gerald T. Hickman, Jennifer H. Holcomb, Phoenix, for Defendants–Appellees, Cross Appellants.

## OPINION

GRANT, Judge.

Appellants Louis and Alice Toy ("Toys") appeal from the trial court's grant of summary judgment in favor of Appellees A. Alexander Katz, Esq. ("Katz") and Harriet Katz, his wife in a legal malpractice action. Katz represented the Toys in the sale of the retail division of their corporation. The trial court ruled the Toys were precluded from suing Katz because his professional negligence damaged only their corporation. The trial court also ruled that, while the corporation was a real party in interest, the Toys' attempt to name the corporation as a plaintiff did not relate back and was time-barred. Therefore, the trial court denied the Toys leave to amend their complaint. The Toys seek reversal of the summary judgment and a remand for a trial on the merits. Katz filed a cross-appeal seeking reversal of the trial court's denial of Katz's Motion to Dismiss for improper service. Both parties request an award of costs and attorneys' fees incurred on appeal.

For reasons that follow, we remand and instruct the trial court to allow the Toys to amend their complaint against Katz to name their corporation as a plaintiff, and to allow the case to proceed to trial on the merits.

## FACTS AND PROCEDURAL HISTORY

The Toys opened a sporting goods business in the mid–1970s, which they incorporated in the early 1980s under the name of Phoenix Wholesale Shooters Supply ("the Corporation"). The Toys were the sole shareholders of the Corporation which was comprised of a wholesale division and a retail division. The retail division was named Phoenix Shooters Supply.

In 1991, the Toys sold the retail division of the Corporation. The Toys had not previously been involved in the sale of a business, therefore they retained the services of a business broker ("the broker") to assist them in locating potential buyers. In the fall of 1990, the broker introduced the Toys to prospective purchasers, Bernard Goodman and Kerry DeCesare (collectively the "Buyers").

### 1. The Negotiations

The Toys and the Buyers entered into negotiations concerning the potential sale of Phoenix Shooters Supply. Goodman asked the Toys to meet with Katz, with whom the Toys had not previously dealt. Goodman identified Katz as his attorney and disclosed Katz's recent representation of him in several business dealings. At Goodman's request, the Toys accompanied Goodman to a meeting at Katz's office. Katz advised the Toys that he had represented a corporation named Toy Enterprises which is owned by members of the Toys' extended family. The Toys held a ten percent interest in Toy Enterprises, but did not participate in its management. Toy Enterprises owns the property on which Phoenix Shooters Supply is located.

In December 1990, the Toys met at Katz's law office with the Buyers and attorney Robert Schwartz ("Schwartz"), who shared office space with Katz. Katz did not attend the meeting. The parties worked on preparing an outline of the terms of the sale of Phoenix Shooters Supply. Schwartz prepared a memorandum to Katz which set forth the key points discussed at the meeting. The memorandum identified Goodman and DeCesare jointly as Buyers. Included in the memorandum was an admonition to Katz stating, "...

details concerning the form of entity must be received."

On January 3, 1991, the Toys and the Buyers met with Katz to discuss further the terms of the sale of Phoenix Shooters Supply. Katz indicated, in light of both his previous representation of Goodman and his representation of Toy Enterprises, Inc., that he could only represent one party to the transaction. The Toys retained Katz to represent their interests in the transaction. Katz prepared a letter dated January 3, 1991, which contains a brief reference to his conflict of interest and confirms that he had been retained to represent their interests in the transaction. That letter confirms that the Toys would be responsible for the fees incurred in connection with the preparation of the sale documents.

Following the January 3, 1991 meeting, Katz prepared several drafts of a Sale and Purchase Agreement (the "Agreement"). A key term in the Agreement related to the value of the inventory of Phoenix Shooters Supply. The original drafts of the Agreement stated that the inventory in Phoenix Shooters Supply would be valued for the purposes of sale based upon "distributor's catalog price plus 10%." The Toys insisted on this language because it would facilitate the calculation of the value of the inventory located within Phoenix Shooters Supply. The Toys and the Buyers anticipated that the inventory valuation, and thus the sale price, would be agreed upon prior to the close of the sale.

In their preliminary negotiations, the parties discussed the valuation of the inventory. Both Schwartz's memorandum to Katz, and the subsequent drafts of the Agreement drafted by Katz, required the parties to agree to the value of the inventory prior to closing the sale in order to establish the inventory price, which represented 75% of the value of the transaction. Schwartz's memorandum to Katz informed Katz of the terms relating to the price of the inventory, stating: "The inventory shall be represented by the seller to be not less than $400,000.00 at cost."

Because the Toys owned the separate wholesale supply business, the parties also bargained for a provision obligating the Corporation to supply merchandise to the Buyers for an indefinite period at a specified price following the sale. The memorandum and drafts of the Agreement also provided that any additional merchandise the Toys would be required to provide after the close of sale would be calculated at "distributor's catalog price plus 10 percent." The parties also bargained for a provision granting the Buyers the right of first refusal to buy the wholesale business. In his deposition during discovery, Katz conceded that he was aware of the Corporation's existence and of its ownership of the wholesale division. The Agreement also specifically refers to the Corporation and its wholesale business.

### 2. Katz's Alleged Malpractice

The Toys allege that throughout the negotiations, Katz communicated directly with the Buyers without their knowledge. The Toys maintain that despite Katz's duty to represent only them in the transaction, he represented the Buyers and also acted as their paid legal representative on the following transaction-related issues: (1) Katz formed Western Weapons Supply, Inc. ("Western"), the corporation to which the Buyers ultimately assigned the right, title and interest they acquired in Phoenix Shooters Supply; (2) Katz was Western's statutory agent for more than a year following the Toys' sale of Phoenix Shooters Supply; (3) Katz prepared the financing documents which defined the financial relationship between the Buyers and Western; (4) Katz served as Goodman's agent to hold stock pledged by Western to secure Goodman's loan to DeCesare which financed the acquisition of Phoenix Shooters Supply; and (5) Katz charged both the Buyers and the Toys for legal services he rendered in connection with the sale of Phoenix Shooters Supply. Katz never disclosed these numerous conflicts to the Toys.

Immediately prior to the close of the transaction, the Buyers instructed Katz to revise critical language concerning inventory valuation in the transaction documents. The Toys allege that Goodman provided Katz with specific written instructions relating to those changes in the sales documents, and that

Katz revised the sales documents in accordance with Goodman's instructions. Specifically, the Buyers instructed Katz to revise the Agreement to provide that both the existing inventory and future purchases of merchandise would be valued at the equivalent of "manufacturer's invoice price to seller, plus 10%."

The Toys further maintain that neither the Buyers nor Katz contacted them to inform them of the change in the transaction documents, and that Katz did not explain the legal effect of the revised language. On the date of the execution of the transaction documents, the Toys maintain they were assured by Katz that the final Agreement was consistent with the terms set forth in the prior drafts.

The Toys allege that Katz negligently drafted the Agreement to name the Toys personally (and not their Corporation) as the sellers of Phoenix Shooters Supply, thereby exposing them to personal liability. In fact, Phoenix Shooters Supply was an asset of the Corporation, and Katz repeatedly referred to Phoenix Shooters Supply as the "Retail Division" in his correspondence to the parties prior to the sale, suggesting that he was aware of its status as a corporate asset. The corporate ownership was discussed openly among the participants to the transaction. Katz made no effort to determine the nature of the ownership of Phoenix Shooters Supply.

Despite Schwartz's admonition in his memorandum to Katz that Katz needed to inquire into the ownership of the business being sold, Katz did not request to review the Corporation's corporate records, or speak to the Corporation's counsel or accountant, or contact the Arizona Corporation Commission to determine the corporate status of Phoenix Shooters Supply. The Toys presented an affidavit of an expert on legal malpractice opining that Katz's conduct concerning this transaction fell below the applicable standard of care and constituted malpractice.

The Agreement provided that the value of the business inventory (which comprised approximately 3/4 of the total transaction price) was to be agreed upon by both the Buyers and the Toys prior to closing. On the date of closing, the inventory analysis was incomplete, therefore no inventory price was available. Katz proposed that the escrow close using an estimated inventory value, with the final inventory value to be resolved later. The Toys allege that Katz did not advise them of the risks to which they would be exposing themselves by turning control of their business over to the Buyers without agreeing on a specific sale price.

The Toys, who had no prior experience in transactions involving the sale of businesses, placed their trust in Katz and executed the Agreement without reviewing it in detail. At the closing, Katz presented a form of Guaranty and Chattel Security Agreement securing payment of $250,000 and $50,000 in promissory notes. However, the promissory notes were actually in the amounts of $400,000 and $50,000. Therefore, Katz failed to conform the security documents to the principal sums of the promissory notes, thereby undersecuring the Toys' interest. As a result of Katz's misidentification of the Toys as the sellers in the Agreement, Katz drafted documents making the Toys the payees on the promissory notes and the secured parties.

After the transaction closed, the Toys became aware of the ramifications of the revision to the inventory valuation language in the Agreement, and only then realized they faced exposure to personal liability because they were defined as the sellers in the transaction documents.

In the late spring and early summer of 1991, a dispute arose between the Toys and the Buyers concerning the valuation of the inventory. As the dispute escalated, the Toys consulted with Katz and advised him of their attempts to establish a value of the inventory. Katz attempted to resolve the dispute on the Toys' behalf and prepared and delivered a demand letter together with settlement documents to the Buyers. Katz's efforts were unsuccessful. The Buyers demanded production of a manufacturer's invoice for every item of inventory, amounting to approximately 14,000 items.

In September 1991, when litigation between the Toys and the Buyers became inevitable, Katz referred the Toys to other counsel. Katz attended the Toys' initial meetings

with their new attorney. However, Katz failed to disclose to the Toys' new attorney his role in the revision of the inventory valuation terms of the Agreement. He also failed to disclose both his prior representation of the Buyers and that he was an incorporator and the statutory agent of the Buyers' corporation, Western. Litigation between the Toys and the Buyers ensued.

### 3. The Business Litigation

From the inception of her representation of the Toys and the Corporation in their legal action against the Buyers (the "Business Litigation"), the new attorney believed Phoenix Shooters Supply was owned and sold by the Toys. Her belief was based upon Katz's representations, and the transaction documents in which Katz had identified the Toys as the sellers. Her belief was also premised on the fact that the Toys were both the holders of the notes and the secured parties. Thus, the lawsuit against the Buyers was brought in the Toys' names and was filed in November 1991.

In the original complaint in the Business Litigation, and all subsequent pleadings, the Toys were identified as the sellers of Phoenix Shooters Supply. Consequently, the Toys and not the Corporation sought relief. The Corporation was a party-plaintiff in the Business Litigation; however, its claim solely concerned payment for the wholesale merchandise sold pursuant to the terms of the Agreement after the close of the sale.

The central issue in the Business Litigation was the interpretation of the language in the Agreement relating to the valuation of the business inventory. The Toys sought, among other things, a declaration from the court that the altered inventory valuation language did not differ materially from the original inventory valuation language. Such a ruling would have permitted the Toys to receive the benefit of the bargain they assumed Katz had negotiated for them.

On August 7, 1992, the trial court in the Business Litigation rejected the Toys' interpretation of the altered inventory valuation language and granted partial summary judgment for the Buyers. The trial court construed the Agreement against the Toys, concluding that the "manufacturer's invoice price" language was clear and unambiguous. The Toys were thus directed to value the inventory by correlating the manufacturer's invoice to every item of inventory. The Toys maintained that this was an impossible task. This ruling was the result of Katz's unauthorized revision of the Agreement severely limiting the Toys' ability to realize the value of the transaction. The trial court's interpretation forced a settlement of the Business Litigation that was unfavorable to the Toys.

### 4. The Proceedings Below

In their underlying professional negligence action against Katz, the Toys argue: (1) they were forced to negotiate an unfavorable settlement in the Business Litigation; (2) their recovery was compromised in that litigation because they did not have manufacturer's invoices for a significant percentage of the inventory contained in Phoenix Shooters Supply; and (3) Katz prepared security documents that did not conform to the promissory notes, thereby undersecuring the Toys' interests.

The Toys claim that as a result of the settlement in the Business Litigation, they had to pay to recover possession of Phoenix Shooters Supply. They also claim that prior to their re-acquisition of the business, the Buyers had severely depleted the inventory and severely damaged the business' good will.

### 5. The Procedural History of the Malpractice Action Against Katz

The Toys initiated an action against Katz alleging breach of contract and professional negligence ("Toy I"). Toy I was filed less than two years after the close of the transaction and within six months of the issuance of the August 7, 1992 minute entry by the trial court in the Business Litigation.

In the early stages of Toy I, Katz filed a Motion to Dismiss alleging that the action had abated. Katz's Motion was denied. Katz sought Special Action review from this court, which was denied. He then filed a Petition for Review with the Arizona Supreme Court, which was also denied.

A second action ("Toy II") was filed while Katz's Petition for Review was pending before the Arizona Supreme Court, and in advance of the two-year anniversary of the issuance of the August 7, 1992 Business Litigation minute entry. Toy II was filed in advance of the statute of limitations deadline to protect the Toys against a statute of limitations defense in the event the Supreme Court held that Toy I should be dismissed without prejudice for abatement.

Because Katz had designated the Toys, not their Corporation, as the sellers in the original sales documents, the erroneous designation was perpetuated throughout the Business Litigation between the Toys and the Buyers. As a result of Katz's mistakes, this professional negligence action was originally brought in the Toys' name.

The Toys' complaint against Katz is based on professional negligence. The original complaint was later amended to add a claim against Katz for breach of contract. During discovery, Katz's error in characterizing the Toys as the owners of the retail division surfaced. Upon the discovery that the retail division was owned by the Corporation, Katz sought summary judgment against the Toys arguing that they had no claim because his negligence had damaged only the Corporation.

In response, the Toys argued that they had a cause of action against Katz because: (1) as a consequence of his professional negligence, he failed in his duty to protect their business interests; (2) he negligently drafted the Agreement and exposed them to personal liability; and (3) he undersecured their interests by incorrectly drafting the security documents and again exposed them to personal liability. In addition, the Toys moved to add the Corporation as a plaintiff and real party in interest.

The trial court ruled that the Toys could not prevail against Katz because his professional negligence damaged only the Corporation. The trial court concluded that while the Corporation was the real party in interest, its claims did not relate back and were barred by the statute of limitations. The trial court granted Katz's Motion to Strike/Motion for Summary Judgment and

dismissed the action. Formal judgment for Katz was entered on March 28, 1995. The Toys timely filed a Motion for New Trial, but the motion was denied. A Notice of Appeal was timely filed by both the Toys and the Corporation.

Because Toy I involved the same parties, claims and defenses as Toy II, the parties stipulated to allow judgment to be entered in Toy II so that Toy II could be consolidated on appeal with Toy I. Toy I and Toy II were then consolidated on appeal.

The Toys seek reversal of the trial court's judgment and a remand of this case for trial on the merits. The Toys also request an award of attorneys' fees and costs incurred on appeal. This court has jurisdiction over the appeal pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(F)(1).

### 6. The Cross–Appeal

Katz cross-appeals, claiming that the trial court erred in denying his Motion to Dismiss the Toys' complaint because in their three Motions for Extensions of Time for Service of Process, the Toys misled the trial court by intimating that Katz was aware of the complaint and that settlement negotiations were ongoing.

The Toys filed a complaint against Katz on January 27, 1993. On three separate occasions, the Toys moved for extensions of time to serve the complaint. According to the trial court, it perfunctorily granted each extension without reading the reasons for the requested extension. The Toys finally served Katz on October 21, 1993.

On November 10, 1993, Katz timely filed an Answer to the Toys' complaint, raising the affirmative defense that the Toys' complaint should be dismissed for insufficiency of service of process. On that date, Katz also filed a Motion to Dismiss for improper service of process, which was denied. While the litigation continued in the trial court, Katz pursued his argument by Petition for Special Action in this court in *Katz v. Superior Court*, No. 1 CA–SA 94–0072. We declined jurisdiction on April 5, 1994. Katz then filed a Petition for Review to the Arizona Su-

preme Court in *Katz v. Superior Court*, No. CV–94–0234–PR, which was denied on September 20, 1994. The underlying case was resolved in the trial court by summary judgment on July 7, 1995. The present appeal and cross-appeal ensued.

In considering Katz's Motion to Dismiss, the trial court determined that the Motions for Extension of Time for Service of Process were not based on good cause. Nevertheless, the court also determined that the Toys were entitled to rely upon the extensions the court improvidently had granted. In the cross-appeal, Katz maintains that the Toys erroneously relied on the orders of the court extending the time to effect service. Katz argues the Toys did not establish "good cause" for the extensions within the meaning of Rule 4(i) of the Arizona Rules of Civil Procedure, and that the Toys misled the trial court by indicating that settlement negotiations were ongoing. Katz seeks an award of costs on the cross-appeal and of attorneys' fees and costs incurred on the appeal. This court has jurisdiction over the cross-appeal pursuant to A.R.S. section 12–2101.

## ISSUES

The following issues are presented for review:

I. Whether the trial court abused its discretion by denying Katz's Motion To Dismiss for Improper Service after finding that the three orders extending time to serve the complaint were improvidently granted.

II. Whether the trial court erred by granting summary judgment to Katz and ruling that the Toys could not maintain an action against Katz for malpractice to recover damages sustained as a consequence of Katz's failure to protect the Toys' interests because any such claim belonged to the Corporation.

III. Whether the trial court erred by ruling that the Toys could not amend their complaint to name the Corporation as a plaintiff.

IV. Whether the statute of limitations on the Toys' claims began to run before the court in the Business Litigation issued rulings establishing that Katz's professional negligence caused the Toys' damages.

## DISCUSSION

### I. The Cross–Appeal Regarding the Motion to Dismiss

We address the cross-appeal filed by Katz first because the issues in the appeal will not be addressed if this court reverses the trial court's denial of Katz's Motion to Dismiss.

### A. The Three Orders Enlarging Time for Service of Process

The Toys' complaint was filed on January 27, 1993, although it was not served until October 21, 1993. On May 21, 1993, 114 days after filing the complaint, the Toys filed a Motion for Extension of the Service Deadline pursuant to Rule 6(b)(1) of the Arizona Rules of Civil Procedure. As an excuse for their failure to serve, the Toys asserted that:

> Plaintiffs are *hopeful* that this matter can be resolved out of court by virtue of a mutually acceptable settlement. To date, the defendants Mr. and Mrs. Katz have not been *formally* served in an effort to contain expenses. This action was filed to meet the applicable statute of limitations. Had it been possible, the *plaintiffs would have delayed filing while attempting to negotiate with the Defendants.*

(Emphasis added.) The Toys then concluded: "if no settlement can be reached by then [the extended deadline to serve the complaint if the motion for enlargement were granted], *the parties will be equally well aware that litigation will be required.*" (Emphasis added.)

Clearly, the Toys' first motion for extension implied that the parties were discussing settlement and that more time was needed to complete negotiations. Although Katz maintains that he had no knowledge that the complaint existed and that he was never contacted by the Toys, he was aware that he was exposed to potential liability for legal malpractice. For example, in the record, there is an August 1992 letter from the Toys' new trial counsel to Katz responding to Katz's demand that the Toys execute a release excusing him from any potential legal

malpractice liability. Nowhere in the record does Katz refute that he made such a demand. The trial court signed an order extending the time for service of process through August 28, 1993.

On August 20, 1993, 205 days after filing the complaint and eighty-one days after requesting the first extension, the Toys filed another motion for extension of time pursuant to Rule 4(i) of the Arizona Rules of Civil Procedure. In that motion, the Toys asserted that but for the statute of limitations, they would have delayed filing the complaint "while attempting to negotiate with Defendants." Katz maintains he was unaware even then of the suit being filed against him, and that he had not talked to the Toys or their counsel since August 1992 when the trial court issued its ruling against the Toys in the Business Litigation.

In the Toys' second motion for extension, the Toys' counsel stated that because she or members of her firm might be called as witnesses in the legal malpractice action, she was seeking substitute counsel. The Toys sought a sixty-day enlargement of time to serve Katz. Again, the trial court perfunctorily granted the extension.

On October 19, 1993, 265 days after filing the complaint, and fifty-seven days after the second request for an enlargement of time to effect service, the Toys, who still had not served Katz, filed a third motion for extension of time. The Toys again stated in that motion that counsel at the new law firm might be called as witnesses, and that substitute counsel had been found. They requested an additional forty-five days so that the new attorney's application for substitution could be considered and he could familiarize himself with the file and serve Katz. The trial court granted the third motion for extension on October 20, 1993, again without more than a cursory review. The summons was issued on that same day. The next day, the summons and a copy of the complaint were served on Katz. Because service was accomplished within the deadline set by the order granting the second extension of time for service of process, we need not consider the merits of the third motion for extension of time.

### B. The Trial Court's Ruling on the Toys' Motion to Dismiss

Katz filed a Motion to Dismiss and Motion to Vacate Orders Extending Time for Service of Process, arguing that the Toys and their counsel misled the trial court in their motions for enlargement of time by suggesting that settlement negotiations were ongoing and that he was aware of the complaint.

Rule 4(i) of the Arizona Rules of Civil Procedure provides in relevant part [1]:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

In support of his arguments, Katz cites *Air Power, Inc. v. Superior Court*, 142 Ariz. 492, 690 P.2d 793 (App.1984). In *Air Power*, we construed former Rule 6(f) of the Arizona Rules of Civil Procedure, the precursor of Rule 4(i), holding that before the trial court may grant an enlargement of time for service, the plaintiff must demonstrate that he has exercised due diligence in attempting to serve the defendant within the mandated period, and that the plaintiff must provide a valid reason why service was not accomplished. *Id.* at 494–95, 690 P.2d at 795–96. We note, however, that *Air Power* was a "blown deadline" case in which the plaintiff waited until the last day of the service period to file a motion seeking an extension of time to serve an out-of-state plaintiff. *Id.* at 493, 690 P.2d at 794. In this case, had the trial court denied the motions for enlargement, the Toys easily could have served Katz within the service deadlines.

---

**1.** Although Rule 4(i) was subsequently amended in 1996 to change the language of the rule, the new language does not affect its substance.

Here, the trial court correctly, albeit belatedly, concluded that there was in fact no good cause to extend the period for service of process. Given that Katz's whereabouts were well-known, and the complete lack of due diligence with respect to service, the trial judge realized he had improvidently granted the motions for extension. In considering Katz's Motion to Dismiss for failure to comply with Rule 4(i), the trial judge acknowledged he had paid little attention to the averments contained in the Toys' motions:

> I believe that most of these motions that come across the Court's desk, mine and others, where service has not been made, they come across pretty fast and furious. You don't check them very well. And if there is practically anything, the courts generally sign them as a matter of course.

The court then discussed whether Katz had demonstrated "good cause" for the enlargement.

Rule 6(b) of the Arizona Rules of Civil Procedure provides:

> When by these rules or by notice given thereunder or by order of court, an act is required or allowed to be done at or within a specified time, the court *for cause shown* may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order....

(Emphasis added.)

Rule 6(b)(1) of the Federal Rules of Civil Procedure is identical to the Arizona rule, and is discussed in 4A Charles Alan Wright & Arthur Miller, Federal Practice and Procedures § 1165, at 475 (2d ed. 1987):

> Rule 6(b)(1) gives the court wide discretion to grant a request for additional time that is made prior to the expiration of the period originally prescribed or prior to the expiration of the period as extended by a previous order.... As the court may exercise its discretion under Rule 6(b)(1) only for 'cause shown,' the party must demonstrate some justification for issuance of the order. However, an application under Rule 6(b)(1) normally will be granted in the absence of bad faith or prejudice to the adverse party.

(Internal citations omitted.)

The trial court's ruling denying Katz's Motion to Dismiss is reviewed on an abuse of discretion standard. *Air Power,* 142 Ariz. at 492–93, 690 P.2d at 793–94. To test whether a trial court has abused its discretion, we must determine not whether we might have so acted under the circumstances, but whether the lower court exceeded the bounds of reason by performing the challenged act. *Bradley v. Philhower,* 81 Ariz. 61, 63, 299 P.2d 648, 649 (1956) (citations omitted).

Here, the trial court considered that if it granted the Motion to Dismiss, the Toys would be unable to refile the complaint because it was time-barred. The trial court also took into account: (1) that the Toys had requested the extensions of time to serve Katz before the deadlines for service of process, i.e., that they had not "blown the deadlines" as did the Plaintiff in *Air Power;* (2) that the Toys had relied upon the court's orders extending the time to serve process, and had their extension requests been denied, they could have easily effected service; and (3) that the Toys had finally served Katz within the time period prescribed by the trial court's second enlargement order.

In denying Katz's Motion to Dismiss for failure to comply with Rule 4(i), the trial court recognized that the facts concerning alleged settlement negotiations between the parties submitted in the *ex parte* applications for extension of time did not satisfy the requirements for good cause even if they were true:

> As to the "good cause" alleged in the May 20, 1993 request, it was simply a hope for "a mutually acceptable settlement." Unfortunately, that hope was one sided and only on [Appellant's] side. It was never communicated to [Appellee]. In fact, no efforts to settle were ever made. A hope for "a mutually acceptable settlement" hardly constitutes "good cause."
>
> As to the "good cause" alleged in the August 19, 1993 request, it is based on an apparent need to change counsel as the

then-present counsel apparently would need to be called as witnesses. While this reason appears better than the first reason given in May, there is no explanation as to why service was not accomplished in the ninety days which preceded this second Motion. Again, "good cause" seems absent.

■ In the minute entry, the trial court correctly determined the fact that the Toys were hopeful that settlement would be reached did not come within the "good cause" exception to the requirement that the summons and complaint be served within 120 days of filing. *See* Ariz. R. Civ. P. 4(i); *see also Healthcare Compare Corp. v. Super Solutions Corp.*, 151 F.R.D. 114, 115 (D.Minn. 1993) (Settlement negotiations between the plaintiff and defendant did not bring the service within the "good cause" exception to the 120–day service requirement.).

In his cross-appeal, Katz correctly argues that his whereabouts were well-known to both the Toys and their counsel, thus there was no showing of "good cause" in the form of due diligence in attempting to serve him. Therefore, Katz concludes, the trial court erroneously granted the motions for extension of time because there had been no attempt to serve him, thus the trial court acted in excess of its legal authority and abused its discretion by denying his Motion to Dismiss. Moreover, the Toys obtained the orders by misrepresenting to the trial court that settlement negotiations were ongoing; therefore, the Toys should not benefit from their own duplicity with the trial court.

In denying Katz's Motion to Dismiss, the trial judge acknowledged his error in granting the motions for enlargement, stating, "I have created a serious problem. And I really don't think, to be real candid about it, that I ought to substitute one lawyer malpractice case for another." In making that comment, the trial court was referring to the possibility that if he granted the Motion to Dismiss, the Toys' sole option would be to file a malpractice action against their attorneys for failing to timely serve Katz because, by that time, the Toys could not have refiled their malpractice action against Katz as the statute of limitations would have run.

■ When a plaintiff fails to show good cause for his noncompliance with Rule 4(j) of the Federal Rules of Civil Procedure, which is identical to Rule 4(i) of the Arizona Rules of Civil Procedure, the court may rule in favor of a noncomplying plaintiff only when some extenuating circumstance presents itself and compels the court, in the interest of justice, to allow the plaintiff's claim to go forward, even in the absence of good cause. *Momah v. Albert Einstein Medical Ctr.*, 158 F.R.D. 66, 69 (E.D.Pa.1994). *A fortiori*, when a plaintiff has obtained an order from the court extending time in which to serve a complaint, and the court later deems its own order improvident, it can, in its discretion and in the interest of justice, rule that the plaintiff was entitled to rely upon the order extending service time. Therefore, the trial judge could, in his discretion, deny Katz's Motion to Dismiss and allow the Toys leave to prosecute their complaint.

### C. The Absence of Prejudice to Katz

■ Even if the trial court erred by denying Katz's Motion to Dismiss the Toys' complaint, to justify reversal, the error must be prejudicial to the substantial rights of Katz; however, the prejudicial nature of such error is not presumed, but must affirmatively appear in the record. *Walters v. First Fed. Savs. & Loan Ass'n of Phoenix*, 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982) (citations omitted). The burden is on Katz to establish such prejudice. *Gutierrez v. Gutierrez*, 20 Ariz.App. 388, 389, 513 P.2d 677, 678 (1973) (citations omitted).

■ Here, Katz was not prejudiced by the delay, nor did he argue prejudice to the trial court. On appeal, Katz also does not demonstrate how he was prejudiced. Moreover, the record shows Katz was always aware of the potential claims against him, and therefore his argument that if he had known of the filing of the complaint he might have begun settlement negotiations with the Toys is not persuasive; Katz could have initiated settlement negotiations when he received the letter from the Toys' attorney refusing to release him from legal malpractice liability. Indeed, that letter put Katz on notice that

the Toys were preserving their right to pursue a claim against him.

In relying upon the trial court's granting of extensions of time to effect service, there is no evidence of bad faith on the part of the Toys or their counsel. The Toys would have faced statute of limitations consequences had they not so relied. We therefore hold the trial court did not abuse its discretion by denying the Motion to Dismiss. We nonetheless stress we do not encourage parties to obtain an order granting an extension of time from a court by misleading the court in an *ex parte* motion. The decision, however, of what was to be done, given that the motions for extension had been granted and relied upon, was within the sound discretion of the trial court.

## II. The Trial Court's Ruling Granting Summary Judgment to Katz and Its Ruling that the Toys Could Not Maintain an Action Against Katz

The Toys appeal from the trial court's grant of summary judgment in favor of Katz. In reviewing a grant of summary judgment, we view the facts and inferences in the light most favorable to the party against whom judgment was entered. *AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 293, 848 P.2d 870, 872 (App.1993) (citation omitted). In conducting our review, we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993) (citation omitted). Summary judgment is appropriate only when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990) (citations omitted).

In the context of reviewing a summary judgment on a claim for attorney negligence, we review whether the plaintiff has established triable issues of fact regarding:

(1) the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession, (2) a breach of that duty, (3) that such negligence was a proximate cause of resulting injury, and (4) the fact and extent of the injury.

*Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (App.1986).

Furthermore, in determining the presence or absence of the requisite skill, care and knowledge in a particular case, we consider all the facts and circumstances presented. *Sarti v. Udall*, 91 Ariz. 24, 26, 369 P.2d 92, 93 (1962); *see also Collins v. Miller & Miller, Ltd.*, 189 Ariz. 387, 392–93, 943 P.2d 747, 752–53 (App.1996).

Katz admits he represented the Toys both in the sale of Phoenix Shooters Supply and thereafter during the early stages of their dispute with the Buyers. He was retained by the Toys to represent and protect their legal and economic interests as officers, directors and shareholders in the sale of the Corporation's retail division. As the Toys' attorney, Katz was bound to discharge his professional responsibilities competently with the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. Ariz. R. Prof. Conduct ER 1.1.

In an affidavit attached as an exhibit to the Toys' Response to Katz's Motion for Summary Judgment, the Toys' legal expert opined that Katz's failure to establish and verify the identity of his client prior to drafting the sales documents in this transaction fell substantially below the standard of practice in the Phoenix area in 1991. The expert's affidavit was admissible below on the standard of care. *Baird v. Pace*, 156 Ariz. 418, 420, 752 P.2d 507, 509 (App.1987) (Expert testimony is generally used to establish the standard of care by which the professional actions of an attorney are measured and to determine whether the attorney deviated from the proper standard.). In *Collins*, the court held that the affidavit of an expert concerning the appropriate legal malpractice standard creates a genuine issue of material fact regarding a lawyer's adherence to that standard of care which precludes summary judgment. 189 Ariz. at 393–94, 943 P.2d at 753–54 (citations omitted). Therefore, there is a question of fact precluding summary

judgment relating to whether Katz's failure even to inquire as to the legal ownership of Phoenix Shooters Supply constituted actionable professional negligence.

Although Katz admits he represented the Toys, he denies ever representing the Corporation. In his deposition, Katz stated: "I didn't represent the Corporation. I had nothing to do with the Corporation, and I never asked to see any of the books." Nevertheless, although Katz did not include the Corporation as a party or signatory to the Agreement, he drafted provisions in the Agreement binding the Corporation. The Toys maintain that they believed that Katz represented the entirety of their interests as the owners of the Corporation. The Toys hired him to protect their legal interests, and because they had no reason to question his competence and ethical commitment to their interests, they deferred to his skills in drafting the transaction documents.

■ There is also some evidence in the record that Katz may have surreptitiously represented the Buyers in the underlying transaction while assuring the Toys that he represented only them. In addition, there is a question of fact regarding whether Katz failed to identify correctly the seller of Phoenix Shooters Supply in the Sales documents. These are both questions of fact which precluded summary judgment.

■ The complaint in this matter alleges professional negligence and breach of contract. Viewing the evidence in the light most favorable to the Toys, we hold that the trial court erred by ruling that the Toys could not maintain an action against Katz to recover damages they sustained as a consequence of his alleged negligent failure to protect their interests in the sale of Phoenix Shooters Supply, and his alleged failure to represent

faithfully their interests under his contract to provide them with legal services in the sale of the business. Because Katz undertook to represent the Toys' interests in the sale of their corporation, a specific promise contained in the retainer letter, the Toys' action may sound both in contract, as to the claim that Katz failed to fulfill his promise to represent their interests, and in tort for legal malpractice. *See Collins,* 189 Ariz. at 394–96, 943 P.2d at 754–56.[2]

■ The Toys also argue that Katz is equitably estopped from asserting that the damage caused by his malpractice injured only the Corporation, not the Toys. *See Bartholomew v. Superior Court,* 4 Ariz.App. 50, 52, 417 P.2d 563, 565 (1966). Equitable estoppel is a vital principle under Arizona law, the three elements of which are: (1) affirmative acts that are inconsistent with a claim afterwards relied upon; (2) an action by a party relying on such conduct; and (3) an injury to a party resulting from a repudiation of such conduct. *Tucson Elec. Power Co. v. Arizona Dep't of Revenue,* 174 Ariz. 507, 516, 851 P.2d 132, 141 (App.1992) (citations omitted). At a minimum, this record presents fact questions relevant to the issue of estoppel precluding summary judgment. *See Cook v. Great Western Bank & Trust,* 141 Ariz. 80, 85–86, 685 P.2d 145, 150–51 (App.1984).

### III. The Trial Court's Ruling that the Corporation's Claims Do Not Relate Back to the Filing of the Toys' Original Complaint Under Rule 17

In his initial Motion for Summary Judgment, Katz asserted that the damage caused by his alleged malpractice injured only the Corporation, not the Toys. As noted above,

---

**2.** We note that the Arizona Supreme Court has vacated the opinion in *Gemstar Ltd. v. Ernst & Young,* 183 Ariz. 148, 901 P.2d 1178 (App.1995), in which this court held that individual shareholders in a corporation lack standing to sue for recovery of individual damages for which the shareholders would otherwise have a cause of action if the corporation brought suit, when the shareholders'.damages arose solely from the acts that caused identical damages to the corporation, and thus proportionately reduced the value of the shareholders' individual shares. *Id.* at 156, 901

P.2d at 1186. The Arizona Supreme Court reversed that decision in *Gemstar Ltd. v. Ernst & Young,* 185 Ariz 493, 509 n. 4, 917 P.2d 222, 238 n. 4 (1996), declining to address the issue of whether the individual shareholders involved had the capacity to sue. However, we do not need to address the issue concerning whether the individuals in this case had standing to sue Katz because we hold that the trial court erred in ruling that the corporate claims do not relate back to the filing of the Toys' complaint and in denying the Toys leave to amend their complaint.

Katz identified the Toys as the sellers of Phoenix Shooters Supply in the transaction documents, and as a consequence the Toys, not the Corporation, became the *de facto* sellers of Phoenix Shooters Supply. Because the retail division was sold on terms, the promissory notes executed in conjunction with the sale were payable to the Toys, and the Toys became the party holding a security interest in the assets of Phoenix Shooters Supply. Thus, Katz's drafting of the sales documents exposed the Toys to personal liability for the sellers' obligations under the Agreement.

When, after close of the transaction, the Toys and the Buyers disagreed with regard to the valuation of the inventory of Phoenix Shooters Supply, Katz made demand upon the Buyers on behalf of the Toys. When it became apparent that the disagreement could not be amicably resolved, and that the Business Litigation would ensue, Katz referred the Toys to new counsel to represent their interests in the Business Litigation.

It was only when a deposition of Mr. Toy was taken in the malpractice litigation that it became apparent to all counsel concerned that the Toys were not the owners of Phoenix Shooters Supply, and that the Sales Agreement was faulty. Katz then filed a Motion for Summary Judgment seeking to avoid liability for his conduct by advancing the real-party-in-interest defense. Katz maintains that the Corporation was the actual seller, despite the fact that he identified the Toys as the sellers in the transaction, and therefore only the Corporation was damaged by his alleged professional negligence.

■ As noted above, Katz's Motion for Summary Judgment maintained that the Toys did not have standing to recover damages suffered by the Corporation as a result of Katz's alleged malpractice. Strictly speaking, however, the concept of standing relates to federal court jurisdiction, as it arises out of the "case or controversy doctrine" of the U.S. Constitution Article III, Section 2, clause 1. *State v. B. Bar Enterprises, Inc.*, 133 Ariz. 99, 101 n. 2, 649 P.2d 978, 980 n. 2 (1982). By questioning whether the Toys were entitled to recover the damages alleged in the complaint, Katz actually raised the question of whether the Toys were real parties in interest. *See Whelan v. Abell*, 953 F.2d 663, 672 (D.C.Cir.) (The question of whether an action should be pursued in the name of the corporation or its shareholders raised a real party in interest issue under Rule 17 of the Federal Rules of Civil Procedure, not a jurisdictional issue of standing.), *cert. denied*, 506 U.S. 906, 113 S.Ct. 300, 121 L.Ed.2d 223 (1992).

■ Rule 17(a) of the Arizona Rules of Civil Procedure states that all cases "shall be prosecuted in the name of the real party in interest." Rule 17(a) also makes clear, however, that an initial mistake in identifying the proper plaintiff will not be fatal to the action, and provides:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

*Id.*

■ The provision of Rule 17(a) was "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Id.* (State Bar Committee Notes, 1966 Amendment). *See also Watts v. State*, 115 Ariz. 545, 549, 566 P.2d 693, 697 (App. 1977) (So long as the defendant is put on notice of the occurrence giving rise to the damages, amendments should be permitted to relate back even though they may change the original theory or add new theories.).

■ Here, although the trial court expressly found that the Corporation was the real party in interest, the court ignored the plain language of Rule 17 and erred in ruling that the amendment adding the Corporation did not relate back. This case presents the precise factual scenario for which the above provision of Rule 17(a) was created. "The provision is intended to prevent forfeiture when determination of the proper party to

sue is difficult or when an understandable mistake has been made." State Bar Committee Note at 169.

In this case, because the Toys had been identified as the sellers, their counsel named the Toys as the plaintiffs in the Business Litigation. During discovery in the underlying litigation, it became apparent that the assets of Phoenix Shooters Supply belonged to the Corporation. The Toys maintain that fact was obscured by Katz's alleged negligence in misidentifying them in the sale transaction documents. Under these circumstances, Rule 17(a) permits relation back of the amended complaint and the addition of the Corporation as a plaintiff. *See Watts,* 115 Ariz. at 547, 566 P.2d at 695–96; *Hess v. Eddy,* 689 F.2d 977, 980 (11th Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983).

Instead of applying Rule 17(a), however, the trial court misapplied *O'Keefe v. Grenke,* 170 Ariz. 460, 825 P.2d 985 (App.1992), holding plaintiff's deliberate, tactical decision did not permit relation back of amended complaint. In doing so, the trial court erred in two respects. First, *O'Keefe* interpreted Rule 15(c) of the Arizona Rules of Civil Procedure in deciding whether an amended pleading adding *a defendant* relates back, and second, the facts in *O'Keefe* are distinguishable from this case.

Here, there is no evidence that the Toys or their counsel exercised a tactical decision not to sue the Corporation. In fact, the Toys' attorney stated, "There was no conscious strategy to exclude the [Corporation] as a plaintiff in the litigation against Katz." In light of Rule 17(a) and *O'Keefe,* we hold the trial court's refusal to permit relation back of the Corporation's claims was error. In addition, this suit was unquestionably filed by the Toys within the statute of limitations period.

Moreover, when the real party in interest question was raised, and the Corporation filed to join the suit, the trial court acknowledged the Corporation was a real party in interest but failed to give the Corporation's joinder "the same effect as if the action had been commenced in the name of the [Corporation]," as Rule 17(a) requires. On this point, the trial court also erred. On remand, therefore, we direct the trial court to allow the Toys to amend their complaint to add the Corporation as a party plaintiff.

Katz also argues the owner of a business is estopped as a matter of law from relying upon representations of the form of a business where there is no dispute that the true form of the business was known to the owner. Because we held above that the grant of summary judgment in this case was improper we need not reach this issue.

## IV. The Statute of Limitations on the Toys' Action Against Katz

As we held above, the trial court's order dismissing the Corporation's claims against Katz should be reversed. Had the trial court correctly applied Rule 17 of the Arizona Rules of Civil Procedure, the trial court would not have needed to consider when the statute of limitations began to run on the Corporation's claims against Katz because the original lawsuit was timely filed.

The facts in this case are similar to those in *Commercial Union Ins. Co. v. Lewis and Roca,* 183 Ariz. 250, 902 P.2d 1354 (App. 1995). In *Commercial Union,* the defendant attorney represented the plaintiff in a non-litigation setting and rendered a legal opinion that insurance coverage did not exist in a particular situation. The client learned, however, that the attorney had overlooked a significant and possibly controlling appellate decision. Nevertheless, because the denial of coverage appeared potentially defensible, the client proceeded to litigate the coverage question before bringing a malpractice action against the attorney.

In the subsequent malpractice action, we held the statute of limitations did not begin to run on the client's claim until the court in the coverage litigation ruled against the client's position. *Id.* at 256, 902 P.2d at 1360. Although the client knew of the potential problem with the attorney's work and had

been sustaining measurable damages in terms of litigation costs prior to that date, we found that only the issuance of summary judgment in the coverage litigation could legally charge the client with knowledge that the attorney's malpractice caused the client's damages. Accordingly, we held that the date of the court's issuance of summary judgment was the date when the statute of limitations began to run. *Id.* at 258, 902 P.2d at 1362; *see Kiley v. Jennings, Strouss & Salmon,* 187 Ariz. 136, 139, 927 P.2d 796, 799 (App. 1996) ("A claim for legal malpractice accrues when: (1) the plaintiff knows or reasonably should know of the attorney's negligent conduct; and (2) the plaintiff's damages are ascertainable, and not speculative or contingent.") (Citations omitted).

■ Here, Katz rendered legal advice to the Toys with regard to the sale of their business assets. Soon after the transaction closed, the Toys discovered that Katz's drafting errors might create problems in the enforcement of the transaction. As in *Commercial Union,* however, it appeared the Toys could enforce their claims against the Buyers despite Katz's errors. The Toys argue Katz encouraged them to pursue the collection action against the Buyers, informing them that the court would enforce the contract in accordance with the Toys' expectations. Katz did so despite his changes to the contract language in the Agreement, which Katz allegedly had inserted in accordance with the Buyers' instructions and contrary to his clients' interests.

Although the Toys incurred attorneys' fees and suffered other damages before the issues surrounding the collection action were resolved, it was only when the trial court ruled against the Toys in the Business Litigation that their action against Katz accrued. As in *Commercial Union,* the trial court's ruling in the Business Litigation established that the Toys' damages were allegedly attributable to Katz's malpractice. We therefore hold the statute of limitations began to run on August 7, 1992, the date of the court's ruling in the Business Litigation.

■ Katz however argues this case is distinguishable from *Commercial Union* because the Toys, not the Corporation, were his clients. We disagree. Even if the Corporation were not Katz's client, it would have a claim against Katz for professional negligence if his breach of duty to the Toys resulted in foreseeable harm to the Corporation. *See Franko v. Mitchell,* 158 Ariz. 391, 400, 762 P.2d 1345, 1354 (App.1988) (A third party can sue an attorney for negligence in representing his client; any duty owed by an attorney to a third party is derivative of the duty owed by that attorney to his or her client.). Far from disputing the existence of such a third-party basis of liability, Katz affirmatively argues that his duties to the Toys were not independent of his duties to the Corporation. We note there is no requirement of privity in tort actions for professional negligence. *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984) (A contractor could bring a cause of action against an architect alleging that a substantial error in plans and specifications prepared by the architect for the property owner resulted in the increased cost of construction.); *see generally* Case Note, *Legal Profession —— Attorney Liability to Third Parties,* 19 Ariz. L.Rev. 653, 658–59 (1977).

The Motion to Amend the Complaint to add the Corporation as a plaintiff was filed on August 1, 1994, within two years of the August 7, 1992 ruling against the Toys in the Business Litigation. The filing of the Motion to Amend constituted commencement of the action for purposes of the statute of limitations. *Mayes v. AT & T Info. Sys., Inc.,* 867 F.2d 1172, 1173 (8th Cir.1989). Thus, in light of *Commercial Union,* the Corporation's action against Katz was timely when the amended complaint was filed, even without applying the mandatory relation-back provision of Rule 17 of the Arizona Rules of Civil Procedure.

## V. Attorneys' Fees and Costs

Both the Toys and Katz seek attorneys' fees and costs in this appeal. Although the

Toys are clearly the prevailing party in both the appeal and the cross-appeal, they cite no authority for their request for attorneys' fees, and therefore neither party is entitled to a fee award in this appeal. *See Barmat v. John and Jane Doe Partners A–D,* 155 Ariz. at 524, 747 P.2d at 1223 (1987) (A legal malpractice action does not generally arise out of contract; therefore the award of attorneys' fees was improper.). However, as the prevailing party the Toys are entitled to their costs. *Roddy v. County of Maricopa,* 184 Ariz. 625, 627, 911 P.2d 631, 633 (App. 1996).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of Katz's Motion to Dismiss. We remand and direct the trial court to allow the Toys to amend their complaint to add the Corporation as a plaintiff.

We also hold that the statute of limitations began to run on the date the trial court ruled in the Business Litigation that the relevant terms of the sales contract were unambiguous and would be enforced as drafted by Katz. Therefore, the Toys timely filed their Motion to Amend adding the Corporation as a plaintiff.

We reverse the trial court's grant of summary judgment in favor of Katz and remand this case to the trial court for further action consistent with this opinion.

THOMPSON, P.J., and KLEINSCHMIDT, J., concur.