NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANTHONY DE PETRIS, an individual, and PATRICIA PALMER, an
individual, *Plaintiffs/Appellants*,

*v.*

CLIFFORD B. ALTFELD; JOHN F. BATTAILE; ALTFELD, BATTAILE &
GOLDMAN, P.C., *Defendants/Appellees*.

No. 1 CA-CV 13-0740
FILED 5-26-2015

Appeal from the Superior Court in Maricopa County
No. CV2010-054583
The Honorable Alfred M. Fenzel, Judge

**AFFIRMED**

COUNSEL

The Nathanson Law Firm, Scottsdale
By Philip J. Nathanson, Alon Stein
*Counsel for Plaintiffs/Appellants*

Broening, Oberg, Woods & Wilson, PC, Phoenix
By Donald Wilson, Jr., Jathan P. McLaughlin
*Counsel for Defendants/Appellees*

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

**P O R T L E Y**, Judge:

¶1    Anthony De Petris and Patricia Palmer appeal the summary judgment dismissing their legal malpractice case against their former lawyers Clifford B. Altfeld, John F. Battaile, and the firm of Altfeld, Battaile & Goldman, P.C. ("law firm").  Because we find that the superior court did not err in granting summary judgment, we affirm.

## BACKGROUND

¶2    The operative facts are undisputed.  De Petris and Palmer, amongst others, invested in two limited partnerships established to acquire real property for investment purposes.[1]  Years later they subsequently became concerned that the general partner of the limited partnerships, Thomas D'Ambrosino, had transferred property from the limited partnerships into other entities he controlled and, as a result, they hired a law firm in 2004 to sue D'Ambrosino and others.  Altfeld and Battaile subsequently filed a complaint and an application for temporary restraining order and preliminary injunction in Pinal County against College Properties, D'Ambrosino, Black Mountain Estates, Montage, Inc., and others.

¶3    Some ten months later, the limited partnership defendants in that lawsuit sought bankruptcy protection by filing Chapter 11 bankruptcy petitions that were consolidated.  As a result of the automatic stay, the litigation in Pinal County was stayed until the lawyers had it removed to the Bankruptcy Court as an adversary proceeding.

¶4    The lawyer for the Bankruptcy Trustee, recognizing the ground work the lawyers had done in the state court litigation, moved to appoint the lawyers and their law firm as special counsel to the Trustee to

---

[1] De Petris purchased fourteen units for approximately $1014 per unit in 1985 and completed his investment payments by 1997.  He also paid for his share of the accounting fees, taxes and related costs.

prosecute that litigation in Bankruptcy Court. The motion was granted in June 2006 subject to the law firm severing their legal relationship with their clients. The lawyers then sent De Petris and Palmer a letter informing them of the order, with a copy of the order, and advising them that they needed to hire new counsel to handle their interests in the Bankruptcy Court. De Petris and Palmer retained new counsel.

**¶5**　　　　The Bankruptcy Court subsequently approved the sale of the real property. Four months later, De Petris and Palmer, along with others, attended a settlement conference; the discussion continued and eventually led to a written settlement and comprehensive release. Although they objected to the terms of the proposed settlement, the proposal included sufficient funds to allow De Petris and Palmer to recover their investment and some interest. Despite their objection and opting out of the agreement, the settlement was approved by the Bankruptcy Court.[2] Although the funds were later disbursed, the court retained the settlement funds for De Petris and Palmer.

**¶6**　　　　De Petris and Palmer unsuccessfully appealed the approved settlement to the United States Bankruptcy Appellate Panel of the Ninth Circuit. *See In re Coll. Properties, Ltd.*, No. BAP AZ-07-1075-PAAK, at *5. The Trustee, as a result, was allowed to levy surcharges against their share of the settlement funds for unnecessarily increasing the cost of litigation, which depleted nearly all of their $128,680.20 in retained funds. *See In re Coll. Properties Ltd. P'ship*, No. 02-05-10095PHXCGC, 2007 WL 3407010, at *1, 2-4 (Bankr. D. Ariz. Nov. 13, 2007).

**¶7**　　　　De Petris and Palmer then filed this legal malpractice action against their former lawyers and their law firm alleging the lawyers had abandoned them to become special counsel to the Bankruptcy Trustee. As relevant, they alleged that:

> As a direct and proximate result of one or more of the aforesaid negligent acts or omissions of the defendant attorneys and the defendant law firm, plaintiffs sustained compensatory and

---

[2] The approved settlement provided that $850,000 would be distributed to the limited partners. The settlement, as a result, represented "a return of equity . . ., along with some interest payments" which was very rare for investing in a highly speculative venture. *In re Coll. Properties, Ltd.*, No. BAP AZ-07-1075-PAAK, 2007 WL 7540957 at *1, 3-4, 8 (B.A.P. 9th Cir. Aug. 14, 2007).

consequential damages, including, but not limited to, the loss of their real estate investment, an adverse settlement in the Bankruptcy Court . . ., and attorney fees that were incurred as a result of defendants' abandonment.

¶8 After discovery, the lawyers and law firm successfully moved for summary judgment arguing that De Petris and Palmer had failed to demonstrate a genuine issue of material fact on the issues of causation and damages. De Petris and Palmer unsuccessfully moved for relief pursuant to Arizona Rule of Civil Procedure 59, and then filed this appeal.

## DISCUSSION

## I

¶9 De Petris and Palmer contend that the superior court erred by granting the lawyers and law firm summary judgment. They argue that they presented sufficient evidence to support their contention that when their lawyers switched sides, they were abandoned, which, as a result, contributed to their damages.

¶10 We review the summary judgment ruling de novo. *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 506, ¶ 10, 269 P.3d 678, 682 (App. 2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We view the facts in the light most favorable to the non-moving parties. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309-10, 802 P.2d 1000, 1008-09 (1990).

¶11 A plaintiff in a legal malpractice action must establish the four elements of negligence: "(1) the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession, (2) a breach of that duty," (3) the breach proximately caused injury, and (4) damages. *Toy v. Katz*, 192 Ariz. 73, 85, 961 P.2d 1021, 1033 (App. 1997); *Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (App. 1986). Causation, although generally a fact question, requires proof of negligence in the case-within-a-case; that is, the party alleging legal malpractice must prove "that but for the attorney's negligence, he would have been successful in the prosecution . . . of the original suit." *Glaze v. Larsen,* 207 Ariz. 26, 29, ¶ 12, 83 P.3d 26, 29 (2004) (internal quotation marks and citations omitted*); see also Cecala v. Newman*, 532 F. Supp. 2d 1118, 1136-37

(D. Ariz. 2007). Moreover, any damages must be demonstrated, *Amfac Distribution Corp. v. Miller*, 138 Ariz. 152, 153, 673 P.2d 792, 793 (1983), and must be ascertainable, not speculative. *See Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139, 927 P.2d 796, 799 (App. 1996) (noting that ascertainable, not speculative or contingent, damages are required before a claim for legal malpractice accrues).

¶12 A plaintiff responding to a motion for summary judgment in a legal malpractice case must present competent evidence that the lawyer was negligent and that but for the lawyer's negligence the underlying case could have been successfully prosecuted. *See Glaze*, 207 Ariz. at 29, ¶ 12, 83 P.3d at 29; Ariz. R. Civ. P. 56(a). Typically, in addition to demonstrating how the lawyer negligently handled the underlying case, a plaintiff would also have to demonstrate he would have been successful but for the lawyer's negligence.

¶13 Here, after the lawyers filed their motion for summary judgment, De Petris and Palmer responded by pointing to De Petris' deposition testimony, as well as their expert's affidavit, to demonstrate there was a genuine issue of material fact about causation and damages. De Petris testified that the lawyers caused them damages by "switching sides and representing the Trustee,"[3] which, in turn, "prevented Plaintiffs from obtaining relief because they were forced to switch lawyers at the last minute"[4] which resulted in "a loss in value of the property of at least $175,000." De Petris also testified "that the [lawyers] caused over $825,000 in damage by instigating the bankruptcy settlement that damaged [Plaintiffs]." Their legal expert, by affidavit, simply opined that: "[t]he [lawyers'] failure to comply with the standards of care and conduct caused [De Petris'] damages." As a result De Petris and Palmer claim there is evidence in the record demonstrating a genuine issue of material fact concerning causation and damages.

¶14 We disagree that they presented "sufficient evidence demonstrating the existence of a genuine factual dispute as to a material fact." *Nat'l Bank of Arizona v. Thruston*, 218 Ariz. 112, 119, ¶ 26, 180 P.3d 977, 984 (App. 2008). De Petris and Palmer needed to produce "*specific* facts showing a genuine issue for trial." Ariz. R. Civ. P. 56(e)(4) (emphasis added). Their assertions, unsupported by facts in the record, are

---

[3] De Petris testified that he had "no legitimate complaint [about his lawyers] prior to the abandonment."

[4] De Petris and Palmer assert that the lawyer they retained was not experienced or capable of handling the bankruptcy matter.

insufficient to defeat a motion for summary judgment. *Florez v. Sargeant,* 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996); *Margaret H. v. Ariz. Dep't of Econ. Sec.,* 214 Ariz. 101, 104, ¶ 10, 148 P.3d 1174, 1177 (App. 2006) (stating that a party's conclusory affidavit is usually insufficient to defeat a motion for summary judgment); Ariz. R. Civ. P. 56(e)(1) ("An affidavit used to support or oppose a motion shall . . . *set out facts* that would be admissible in evidence . . . .") (emphasis added).

**¶15**　　　The deposition testimony and expert's affidavit do not establish that "but for" the lawyers switching sides to be special counsel, De Petris and Palmer would have been more successful in the Bankruptcy Court proceedings. They did not present any evidence by a lawyer specializing in the Bankruptcy Court, or other evidence, that would support De Petris' deposition claim that the lawyers: (1) could have prevented the sale of the property by the Bankruptcy Court; (2) could have recovered more in the Bankruptcy Court, whether by trial or settlement; or (3) could have convinced the Bankruptcy Court to allow them to separately sell the real property units that were the subject of their investment. *See Phillips,* 152 Ariz. at 418, 733 P.2d at 303.

**¶16**　　　Moreover, although De Petris testified that he lost $175,000 once the real property was sold,[5] and $825,000 as a result of the approved settlement, there is no evidence that the lawyers, by switching sides, were responsible for those loses.[6] Additionally, the expert's affidavit does not explain how the lawyers becoming special counsel caused or contributed to the alleged damages. *See* Ariz. Rev. Stat. ("A.R.S.") § 12-2602(B)(4) (requiring a preliminary expert opinion affidavit to contain information regarding "[t]he manner in which the licensed professional's acts, errors or omissions caused or contributed to the damages or other relief sought by

---

[5] De Petris testified that the $175,000 represented the difference between what he thought the 140 acres of property was worth and the Bankruptcy Court's approved sale of the property for $5,825,000. There is no evidence that the approved sales price was below market rates or was otherwise unreasonable.

[6] The $850,000 represents the portion of the settlement that went to D'Ambrosino and Montage. *See In re Coll. Properties, Ltd.,* No. BAP AZ-07-1075-PAAK, at *3. Although De Petris believes those two parties were the alleged architects of the collapse of the project, the Bankruptcy Court recognized that it was due to the lawyers' efforts that the real property was brought into the bankruptcy estate and resulted in a recovery to all the limited partners. *See In re Coll. Properties Ltd. P'ship,* No. 02-05-10095 PHXCGC, 2007 WL 1559899, at *3 (Bankr. D. Ariz. May 29, 2007).

the claimant"). The evidence, as a result, is conclusory and speculative, and does not raise a genuine issue of material fact that "but for" the lawyers "switching sides" De Petris and Palmer would not have been damaged.

**¶17** De Petris and Palmer wanted to protect their investment and recover any appropriate damages as they pursued the general partner from Pinal County to the Bankruptcy Court. They, however, failed to demonstrate their lawyers caused them damage by becoming special counsel to the Bankruptcy Trustee without notice, discussion or approval. As a result, they have failed to establish a genuine issue of material fact regarding two essential elements to their legal malpractice claim. *See Phillips*, 152 Ariz. at 418, 733 P.2d at 303; *Florez,* 185 Ariz. at 526, 917 P.2d at 255. Consequently, the lawyers and law firm were entitled to judgment as a matter of law, and the superior court properly granted summary judgment in their favor.

## II

**¶18** Citing Arizona Rules of Civil Appellate Procedure 21 and 25, and A.R.S. § 12-341, the lawyers request their attorneys' fees and costs incurred on appeal. We do not find that De Petris or Palmer frivolously exercised the right to appeal the judgment or that it was done solely for the purpose of delay. *See* ARCAP 25. As a result, the lawyers and the law firm are not entitled to fees on appeal. They, however, are the prevailing party on appeal and are entitled to recover their costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶19** The judgment is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama