NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

WAYNE S. GOSHKARIAN, et al., *Plaintiffs/Appellants*,

*v.*

THOMAS P. MCGOVERN, et al., *Defendants/Appellees*.

No. 1 CA-CV 17-0357
FILED 7-19-2018

---

Appeal from the Superior Court in Maricopa County
No. CV2013-016271
The Honorable Hugh Hegyi, Judge

**AFFIRMED**

---

COUNSEL

Barton Pyper P.L.L.C., Scottsdale
By Mark B. Pyper
*Co-Counsel for Plaintiffs/Appellants*

Owens Law P.L.C., Scottsdale
By Bradley T. Owens
*Co-Counsel for Plaintiffs/Appellants*

McGovern Law Offices, Phoenix
By Thomas P. McGovern
*Co-Counsel for Defendants/Appellees*

Grant Woods Law, Phoenix
By Grant Woods
*Co-Counsel for Defendants/Appellees*

Law Office of Scott E. Boehm, P.C., Phoenix
By Scott E. Boehm
*Co-Counsel for Defendants/Appellees*

Lloyd Law Group P.L.L.C., Payson
By Arthur E. Lloyd
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jon W. Thompson joined.

---

**J O N E S**, Judge:

**¶1**        Wayne and Melissa Goshkarian appeal from the trial court's final judgment granting summary judgment in favor of Appellees Thomas and Carol McGovern and McGovern Law Office (collectively, MLO) in a legal malpractice action.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In 2003, the Goshkarians filed for Chapter 7 bankruptcy.  In 2006, they signed 40% contingency fee agreements with six different law firms (collectively, Contingency Attorneys) to pursue a claim for the wrongful death of their infant son.  The Goshkarians did not advise the bankruptcy court of the wrongful death action or the contingency fee agreements, and the bankruptcy closed in July 2006.  In 2010, the Goshkarians settled their wrongful death claim for $2.2 million.  The Goshkarians then petitioned to reopen the bankruptcy proceeding and hired MLO to dispute the Contingency Attorneys' claims to the settlement proceeds.

**¶3**        Attorney Mark Harrison was hired as an expert on behalf of the Goshkarians to opine as to the applicable disciplinary rules and "other legal, ethical and equitable principles to the requests for an award of

attorneys' fees submitted by" the Contingency Attorneys. Harrison prepared a preliminary report that was filed with the bankruptcy court in April 2011. Harrison opined that the contingency fee agreements were voidable because the Goshkarians had reported they did not know of the fee-splitting arrangement among the Contingency Attorneys until they received the settlement documents. Therefore, at most, the Contingency Attorneys should be awarded a *quantum meruit*[1] recovery of reasonable attorneys' fees. Harrison specifically reserved the right to modify the opinions expressed in the preliminary report if additional information was obtained.

**¶4** After the preliminary report was filed, the Contingency Attorneys filed a response and supplement containing affidavits from their experts and additional documents. The experts opined the Contingency Attorneys' fee agreement complied with the Arizona Rules of Professional Conduct and that the retention and association of the litigating lawyers was disclosed and consented to by the Goshkarians. The experts' opinions were based in part upon a newly disclosed "fee split" acknowledgment signed by both Goshkarians in October 2010, directly controverting statements made in Harrison's preliminary report.

**¶5** At 12:16 p.m. on June 7, 2011, Thomas McGovern sent the Goshkarians an e-mail confirming he had spoken with each of them about pursuing a settlement rather than proceeding to a hearing on the fee dispute. The email stated: "I write to confirm that I have authority from the two of you to try and negotiate for reduced fees. . . . If they get to 100K reduction, I am instructed to say yes." Wayne Goshkarian responded at 12:26 p.m., writing: "I am in agreement to try to settle with these guys. Keep both of us posted." Melissa Goshkarian responded at 1:30 p.m., writing: "I am still of the opinion that I am willing to settle." Later that afternoon, the Contingency Attorneys agreed to reduce their fees by $100,000, and the matter settled with the parties bearing their own fees and costs.

**¶6** After settlement, the Goshkarians filed a legal malpractice suit against MLO, claiming it had made several false and misleading statements to induce the settlement. MLO filed a motion for summary judgment arguing all the statements identified in the Goshkarians' complaint were true, and, regardless, could not have effected the

---

[1] *Quantum meruit* literally means "as much as he deserves" and contemplates recovery of a reasonable amount to avoid unjust enrichment. *Levine v. Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.*, 244 Ariz. 234, 236 n.2, ¶ 3 (App. 2018) (quotation omitted).

Goshkarians' decision to settle because they occurred after the Goshkarians provided settlement authority. The trial court agreed the statements at issue were either truthful statements of fact or opinions or estimates supported by ample evidence, and also found the Goshkarians had failed to prove any injury where the settlement netted them an additional $100,000 and prevented the Goshkarians from incurring additional expert witness fees or being assigned full responsibility for the Contingency Attorneys' legal fees. The Goshkarians timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶7**        We review the trial court's grant of summary judgment *de novo*, viewing the facts and reasonable inferences in the light most favorable to the party opposing the motion. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003) (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002)). Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990); Ariz. R. Civ. P. 56(a). We will affirm the entry of summary judgment if it is appropriate for any reason. *See City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14 (App. 2001) (citing *Guo v. Maricopa Cty. Med. Ctr.*, 196 Ariz. 11, 15, ¶ 16 (App. 1999)).

**¶8**        "As in any negligence action, a plaintiff in a legal malpractice action must show the following basic elements: duty, breach of duty, causation, and damages." *Phillips v. Clancy*, 152 Ariz. 415, 418 (App. 1986) (citation omitted). Accordingly, a plaintiff claiming legal malpractice must establish:

> (1) the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession, (2) breach of that duty, (3) that such negligence was a proximate cause of resulting injury, and (4) the fact and extent of the injury.

*Id.*

**¶9**        "[O]pponents of a motion for summary judgment do not raise a genuine issue of fact by merely stating in the record that such an issue exists. Rather, they must show that competent evidence is available which will justify a trial on the issue." *Flowers v. K-Mart Corp.*, 126 Ariz. 495, 499

(App. 1980) (citing *Cullison v. City of Peoria*, 120 Ariz. 165, 168 (1978), and *Hensley v. A. J. Bayless Stores, Inc.*, 5 Ariz. App. 550, 552 (1967)). Affidavits and testimony by plaintiffs, without supporting documentation, may be found insufficient to overcome summary judgment. *See Gilmore v. Cohen*, 95 Ariz. 34, 36-37 (1963) (holding the plaintiffs' testimony, without supporting business and tax records, was insufficient to overcome summary judgment); *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 583, ¶ 42 (App. 2015) (concluding the plaintiff's testimony and conclusory statements regarding damages, "unsupported by any documentary evidence," were speculative). If a party fails to produce evidence to support its claims, summary judgment is appropriate. *See* Ariz. R. Civ. P. 56(e).

**¶10**      The Goshkarians argue MLO committed legal malpractice by making five false statements in e-mails that were intended to and did induce the Goshkarians to settle the fee dispute. The statements identified by the Goshkarians are that: (1) the Contingency Attorneys' counsel was seeking $50,000 in fees in connection with his services in the fee dispute; (2) the bankruptcy court had recently "run off a string of rulings" adverse to the Goshkarians' position; (3) the bankruptcy court had granted the Contingency Attorneys' request to introduce three hundred exhibits at the fee dispute hearing; (4) Harrison would charge an additional $50,000 to prepare for and attend the fee dispute hearing; and (5) there were three boxes of documents that had not yet been sent to Harrison to review.

## I.      Post-Settlement Statements

**¶11**      As a matter of practicality, the Goshkarians could not have been induced to settle by statements made after they had already given MLO settlement authority. MLO presented evidence that the Goshkarians provided settlement authority via telephone the morning of June 7, 2011. At 12:16 p.m. that day, MLO e-mailed the Goshkarians, seeking confirmation of its settlement authority; the Goshkarians responded and confirmed at 12:26 and 1:30 p.m. MLO then sent another e-mail at 1:42 p.m., which contains statements (1) and (2) above. Additionally, statement (5) was sent via email to the Goshkarians on June 8, 2011 — the day after the settlement.

**¶12**      At summary judgment and again on appeal, the Goshkarians argue they did not provide settlement authority before MLO's email at 1:42 p.m. on June 7, 2011. The Goshkarians objected to MLO's statement of facts by stating:

> [Plaintiffs] dispute that [they] gave defendants any authority to settle the fee dispute as of June 7, 2011, as of 12:16 p.m. According to the emails contained in defendants' Exhibit E, at 12:26 p.m., plaintiff Wayne Goshkarian conveyed to defendants that he was "in agreement to try to settle" but had not authorized any specific settlement amount. Further, plaintiff Melissa Goshkarian sent defendants an email at 1:30 p.m. stating that she still had a conflict with Wayne Goshkarian regarding the settlement proceeds. . . .

> Plaintiffs dispute that there was a "settlement decision" of any kind made prior to the false or misleading statements supporting plaintiffs' complaint against defendants, including but not limited to the 1:42 p.m. email.

These statements were supported only by general declarations from Wayne and Melissa Goshkarian stating they had read their response to MLO's statement of facts and "know that each statement of fact contained therein [is] true."

**¶13** In reviewing the record *de novo*, even in the light most favorable to the Goshkarians, we find that no jury could find the Goshkarians had provided settlement authority any later than 1:30 p.m.[2] MLO wrote to confirm the authority to settle for a $100,000 reduction, and the Goshkarians responded affirmatively, in writing. The Goshkarians' unsupported declarations are simply insufficient, in light of the unambiguous language of these communications, to present a genuine issue of material fact. *See Flowers*, 126 Ariz. at 499. Thus, none of the allegedly false statements made after 1:30 could have induced the Goshkarians to settle, and their claims of malpractice related to those statements fail as a matter of law.

## II. True Statements

**¶14** The Goshkarians allege that MLO's statement that "[the Contingency Attorneys] asked to ass [sic] 300 exhibits today. The [Bankruptcy] Judge said yes and invited them to summarize," was false and

---

[2] Although the trial court, in its under-advisement ruling, stated "a jury could conclude that all of the allegedly false statements were contained in the 12:16 p.m. email from MLO to Plaintiffs, and that Plaintiffs did not give settlement authorization to MLO until approximately 2:00 p.m.," our *de novo* review of the record reveals no support for the court's conclusion.

misleading. The transcript from the June 7, 2011 bankruptcy court hearing supports MLO's statement. There, counsel for the Contingency Attorneys stated: "we have over 300 exhibits that we're listing," and the bankruptcy judge replied: "I would hope again that a lot of that could be covered by summary." Additionally, later that afternoon, counsel sent MLO an e-mail with a list of 362 exhibits. Statement (3) is not false or misleading; therefore, it cannot form the basis of a malpractice claim.

¶15        The Goshkarians also allege MLO falsely stated that Harrison "would charge an additional $50,000 to prepare for and attend the June 13, 2011 hearing." The Goshkarians did not identify where in the record this statement can be found or otherwise explain when the statement was made. Our independent review of the record reveals no such statement; however, there are three e-mails that could possibly form the basis of statement (4). First, in an email sent on June 7, 2011 at 12:16 p.m., MLO stated: "This week alone will cost you a possible $80-100,000 worst case scenario: fees to Carmel, McGroder, Shelley, McGovern and Harrison." Within the same e-mail MLO stated: "I will have to deliver boxes to Mark Harrison to get him ready and his bill will grow considerably through Monday." Second, at 6:32 p.m. the same day, MLO sent an e-mail confirming settlement and added that "we avoided a $50,000 week ahead; a $50,000 claim by Mr. Carmel." Finally, the next day, MLO sent an email advising that "by resolving the issue, we also avoided $50,000 over the next 6 days from your fees and costs."

¶16        The latter two emails are irrelevant because they occurred after the settlement. *See supra* ¶ 11. The first e-mail indicates only that Harrison's bill would increase substantially if the case did not settle. The record reflects that Harrison swore within a later affidavit that to properly prepare to testify, he would need to "carefully review all of the exhibits [he] had not seen, not summaries of those exhibits, and would then be required to research any legal issues presented by [his] review of the exhibits." Harrison added that $50,000 was a reasonable estimate for his services were he "required to review and evaluate voluminous exhibits and testify at the scheduled hearing." Accordingly, we likewise find statement (4), encompassing MLO's representations regarding Harrison's increased fees, to be truthful.

¶17        An attorney does not breach his duty of care by making truthful statements about factors that would be relevant to the decision to settle. Accordingly, MLO is entitled to judgment as a matter of law, and we find no error in the grant of summary judgment in MLO's favor.

## CONCLUSION

**¶18**      The order granting summary judgment is affirmed. As the successful party, MLO is awarded its costs incurred on appeal upon compliance with ARCAP 21(b).



AMY M. WOOD • Clerk of the Court
FILED:   AA